REC'D AUG 1 4 2024

REC'D AUG 1 4 2024

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JEREMIAH CARBER | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | CIVIL ACTION NO. 24-cv-01898-JDW |
| UNIVERSITY OF WISCONSIN- | : | |
| LA CROSSE | : | |
| Defendant. | : | |

## PLAINTIFF JEREMIAH CARBER

## COMPLAINT

TABLE OF CONTENTS:

1) FACTS ABOUT UWLAX MSED PROGRAM ......................pages 2-5

Timeline- Key Moments.................................................pages 5-7

COMPLAINT ARGUMENTS- Sections # 2 through #18....pages 8-23

Evidence INDEX.............................................................pages 24 -25

Evidence........................................................................pages 26-

### 1) **Facts About the UWLAX MSED program.**

Carber was initially informed that the MSED degree from UWLAX would reciprocate in 45 out of 50 states so that he could further his career in America should he decide to come back to USA in the future. Plaintiff had completed his BSED (Bachelors in Science of Education from TEMPLE University in Philadelphia PA in 2008 and since then had years of experience teaching abroad in Asia. At the start of the program in February 2021, Carber had a 2-year-old child and spouse at the time. Carber entered into the MSED agreement by paying on average of over three thousand dollars per term in order to attain a degree with Principal Certification to further his career and family. UWLAX program had solicited that it would award the Educational Leadership Degree along with at least one a Principal Certification.  Carber purchased into their online program and paid the application fee for the UWLAX MSED program that offered one or two certifications, depending on if you finish only 5 or 6 terms.  Carber was approved into the program and was assured by Bill Gillespie, who was the Program Director of Educational Leadership about the Term lengths and degree was valid. Bill said that the program would finish in 5 or 6 terms. Bill Gillespie was

aware of Carbers situation abroad with his new one-year contracted employer and that Dr. Vance did not work together with him anymore, but she would still be available online or by phone. Dr. Vance was approved by Professor Bill Gillespie to be the designated sight supervisor and worked on at least one or more assignments per Terms 1-3. (see evidence A-1)

On or about February 8th, 2021, Carber was accepted into UWLAX online MSED program after going through an admissions process where he was told that he must have a site supervisor that would sponsor him. Carber had submitted Dr. Vance's credentials along with his criminal background check to admissions director on or about February 2021and was approved by admissions director into the program a few weeks late into the program. At this point Carber contractually agreed to pay for this education expecting to receive a master's degree along with at least one or two certifications. This contractual agreement was in effect for Terms 1, 2, 3 where plaintiff had received good grades, done modules, and assignments all while paying out of his own pocket for the expenses, time, and energy to achieve the degree that he was paying money and working towards. Over $10,000 USA dollars were paid by Carber towards achieving his higher education that UWLAX took with the promise of awarding their MSED degree with certification. (See Evidence A-2 through A-6)

The UWLAX MSED program was a research-based program, meaning that three professors (Bill Gillespie, Ann Yehle and Bonnie Roscovius) would not teach lessons. Instead, they would comment and provide feedback after such assignments, modules, projects were researched and completed. Because Carber was accepted into the program

two weeks late, he had hurried to complete the very first assignment with Professor Ann Yehle about finding 5 school correspondences and analyzing them as bad or good examples. Carber had picked some interesting examples he found on google and wrote up rhetorical papers that were meant to engage the reader and spark interest. Carber received feedback from Yehle that complimented his initial paper but yet a year later her compliments were twisted into complaints. In Term 1 Ann Yehle would later send plaintiff an inappropriate digital file of a dictionary about modern sexual terminology which was very vulgar. Carber did not engage in that action and was not interested in "Metro-sexual" terms and the latest LGBQ+ phrase lines which were expressed upon him.

In Term 3, Plaintiff was forced to do an assignment that was discriminative in nature as he had to create a video where he needed to give his own experience and testimony about "White Privilege." It was very discriminating against white people and Carber felt like the assignment was targeted at himself as he has Caucasian skin.  This is an example of how UWLAX professors discriminate at will and push their CRT (Critical Race Theory) & DIE (Diversity, Inclusion & Equity) programming. Carber thought he signed up for learning valuable skills and techniques as a Principal but was being pushed to talk about discriminating conversations of White Privilege and given "Got Privilege @Instagram" accounts.  Carber was told to attend the event, "Waking up White" to understand Social Justice as this would count towards total Practicum experience needed. The event made Carber on edge and felt like he was being discriminated against because he had Caucasian skin. Carber spent many years working in Philadelphia with many people of color and lived in a predominantly African American community and he never treated people any different

because the color of their skin. Carber does not know why UWLAX discriminated against

him all the sudden in Term 4, and continued for many months afterward, but it shows that

UWLAX discriminates at will as they break contracts and make up false narratives.

 **Timeline Key moments:**

   2-3-21 Plaintiff paid for application fee and applies to MSED program with
   admissions Cindy George, Jenny Holm and phone call with Bill Gillespie. (Evidence
   A-6)

   2-5-21 Plaintiff paid and entered contracted with UWLAX for Education Services
   with a MSED degree with Certification to be rendered. Plaintiff was given an
   estimated price for 5 Terms = $21,000 for x amount Credits that costed $450 per
   credit (Evidence B-1 through B-4)

   2-8-21 UWLAX professor Bill Gillespie affirms Dr. Vance will be designated Sight
Supervisor in his email. (Evidence A-1)

   2-9-21 Jenny Holmes UWLAX sends welcome notification and class schedule
(Evidence A-5)

   2-11-21 UWLAX professor Bill Gillespie confirms acceptance into MSED program.
(Evidence A-2)

|  |  |  |
|---|---|---|
| Term 1 | 1/25/2021 - 5/21/2021<br>Paid $ 2,819.73 | Earned 6 credits (2 classes) |
| Term 2 | 5/24/2021 - 8/18/2021<br>Paid $ 3,501.50 | Earned 8 credits (3 classes) |
| Term 3 | 9/7/2021 - 12/30/2021<br>Paid 4,008.14 | Earned 8 credits (3 classes) |

Terms 1-3 were **completed with 4.0 gpa** and in Good standing with all tuition
payments made totaling $10,329.27 (Evidence B-5)

**On or about three weeks into Term 4, the following happened:**

2-11-22  Plaintiff & family moves 500 miles+ from Chinese Wuhan City to new City Nangshan to start new contracted job.

2-14-22  PIP Sent- UWLAX attacks Carber who no longer has online access to Terms 1-3 classes but is told to recomplete finished schoolwork's from over a year ago. (Evidence C-1)


3-12-22 Professor tells student to "Withdraw from program" (He repeats these words again along with "exit from the program" on 3-15-22 email. (Evidence C-2)

3-15-22  3:01AM Professor says *"Perhaps you can have someone cover your class"* for the meeting on March 15th 10AM and does not try to reschedule ever again. (Evidence C-2)

3-15-12 Professor retaliates- **creates** student **Letter of Intent to Dismiss** (the date is marked in top left) (Evidence C-4)

3-15-22 Student tries to get help, so he files complaint direct with UWLAX (Evidence E-5)

3-26-22 Student receives **back dated Letter of Intent to Dismiss** which must be replied by April Fool's Day. (Evidence C-3 and C-4)

3-31-22 Student requests not to be dismissed  (Evidence C-5)


4-26-22 Student receives response to Request not to be dismissed, (Evidence C-6)

> Letter dated April 15th 2022, The Admin Team "Team" unanimously agreed your dismissal was appropriate and will be effective May 6th 2022

5-6-22 Student was Dismissed and not allowed to enroll in Term 5

6-6-22 Student hired Mediator Attorney Bill Reil to Appeal Dismissal.   (Evidence B-7 & E-1)

10-10-22 Marcie Wycoff Horn UWLAX mentions possibility of completing program in USA with designated Sight Supervisor (Evidence E-2)

4-4-23 Attorney Matt Lind UWLAX raises barriers as he said now that 4 already completed & graded classes need to be retaken in USA if Online student attempts to

finish Practicum class in USA. Retaliation continues to this day as these demands still stand.  (Evidence C-7)

| Term 4 classes | 1/24/2022 - 5/20/2022   Paid $0      Balance $3,374.41 | Completed 7 Credits (3 (Evidence B-4) |
|---|---|---|
| | | Paid Bachman Law $300  & Bill Reil Mediator $3,500 (Evidence B-6) |
| | | Plaintiff was not going to pay for getting dismissed, it was never part of the original deal, but UWLAX still billed Plaintiff for Term 4 while hindering plaintiffs' career and educational expectations. |

**COMPLAINT:**

2) Plaintiff had a legal enrollment contract that was tendered with defendant UWLAX to render education services and ultimately award a MSED degree with Principal Certification that would reciprocate in 45 of 50 American States under the terms that Dr. Vance is approved as his Sight Supervisor. Carber paid and trusted UWLAX would help guide and create a clear path towards graduation that was well within the scope of law. Instead of achieving a MSED UWLAX degree of which Carber was ¾ nearly completed, he was attacked and mired in false accusations going about three weeks into the beginning of term 4, as his Online University Professors Bill Gillespie and Ann Yehle created a nightmare scenario which would forcefully remove him from the contracted program and break contract as Plaintiff paid for services that were never fulfilled and or fully rendered. UWLAX used a dismissal letter with false accusations that didn't fit reality because UWLAX awarded Carber the highest-level marks of A grades for prior terms 1, 2, and 3 in all classes completed. Plaintiff maintained a 4.0 gpa and had kept moving on as he completed and received feedback. It does not make sense to give a student good grades, and then tell plaintiff to improve a year or so later.   Looking at the final grades from EDU 765, Carber received a 97% score and yet that class's first assignment was mentioned 3 times in the PIP. Did UWLAX grade incorrectly and if it was an issue, why wasn't plaintiff notified earlier? Without any grade given yet in Term 4, Carber is given an improvement plan when his grades up to that point were perfect. This shows that UWLAX professor Bill Gillespie decided to break the MSED contract and create a nightmare scenario for Plaintiff based on

false accusations that do not make sense as the prior grades were very good. It's

unreasonable that Plaintiff was given good grades, but then suddenly being told that the A

grades = 4.0 gpa were not good enough and needed to be redone.   (See Evidence B-5)

When Professor Bill Gillespie sent the PIP, it showed an attack on Carbers Freedom

of Expression which was his Federal Rights being violated. Carber's writings were graded

and received good grades, yet one year later his professors Bill and Ann would attack

Carber about his prior Term 1 written assignment work. Precedence shows in the **_Tinker v._**

**_Des Moines case_, 393 U.S. 503 (1969).** The Supreme Court had ruled "On Feb. 24, 1969,

the court ruled 7-2 in Tinkers' favor **that students do not "_shed their constitutional rights_**

**_to freedom of speech or expression at the schoolhouse gate._" (**ACLU 2021) This was a

landmark case for many students who wanted to express themselves in many diverse

equitable ways but were too afraid to. The 1970's was an era of self-expression in the likes

of music, culture, drug usage, pollution, and future peaceful protests and Tinker became

famous as more and more people started to tinker into new frames of thought as well as

habits. Society changed decades later and so did school uniforms that are meant to help

students achieve academically while instilling a passion for learning.

**3)** On or about February 14th, at 2:37AM, Bill Gillespie sent a message with the subject

heading " Re: Canceled: Meeting with Jeremiah" as he mentioned a meeting for February

15th at 9pm and included a PIP.  (See Evidence C-1) Because the Meeting was created with

less than 24-hour notice and Plaintiff had recently moved into a new City and found an

apartment to start new contracted work, he did not get the message in time, yet he was unreasonably blamed for missing the haphazardly arranged meeting that Plaintiff never confirmed.

Before starting Term 1, on February 8th, 2021, Plaintiff and defendant agreed that Dr. Vance would serve as his Sponsored Sight Supervisor as this was a requirement to be accepted into the UWLAX program. (See Evidence A-1)  The term 4 PIP which was sent February 14th, 2022, had new mentioning that Carber must find a new Sight Supervisor of which Carber was given a barrier that he was unable to overcome because his new employer did not have any administrators with a current valid USA Principal Certificate. Carber had reasonably suggested his new employers Administrator Barbara Franks who had attained her Principal Certificate, but it had expired while she was working in Asia. (See Evidence E-6) Bill Gillespie would not accept Barbara Franks and mentioned that Carber should withdraw from the program without any refunds for all the monies paid for Terms 1, 2, and 3.  (See evidence C-2 )

4) On or about March 12th, 2022, Bill Gillespie told Carber that he should withdraw from the program now and seek a refund for only Term 4 costs with UWLAX Student Life Coordinator Kara Ostlund. At this point, UWLAX would not provide any clear path towards graduation and sought to "kick out" Carber and break their contractual agreement for education services without awarding a MSED degree and certification. (See evidence C-2 and E-4 )

On or about March 15th, 2022, Bill Gillespie says in an email. "The Improvement Plan was set up to give you an opportunity to improve academically and exit the program if the Practicum requirements were not met." Carber asked, "How is exiting a program considered an opportunity? Bill Gillespie never responded to that question. It is confusing and unreasonable to think that exiting the program would somehow benefit and be an opportunity for Plaintiff as he had already paid into the program and spent much time completing the program deliverables. The PIP was very unreasonable because it contradicts the very reasoning Carber bought into UWLAX online program which was because UWLAX accepted Dr. Vance who was willing to mentor Plaintiff. Bill Gillespie affirmed this on the phone and by email on February 8th 2021. (See Evidence A-1) Dr. Vance was approved to be Carbers' designated Sight Supervisor for working throughout the course and should have continued for the Term 5 practicum class. Dr. Vance was made known of the circumstances by Carber and she remains supportive and ready to be the sponsored supervisor as she recently renewed her Principal License with the State of Georgia.

Carber tried peacefully to figure out what was happening so he phoned the Student life department and after speaking with Amanda who wrote him an email suggesting he should file a complaint and not fear any retaliation by his professor. (See Evidence E-5) Carber filed the complaint on March 15th but it was not heard by UWLAX and retaliation continued throughout Term 4 leading up to Plaintiff being dismissed without his approval.

**5)** Carber did not agree with the dismissal notice and wrote a letter requesting not to be dismissed. (See evidence C-5 ) Even though Carber with suggestions from UWLAX Kara Ostlund drafting a letter together and submitting it before the April 1st, 2022 deadline, UWLAX ignored Carbers' request to not be dismissed. After waiting about 2.5 weeks later, UWLAX sent him a notice on April 16th, 2022, that he would be dismissed as of May 6th which was the end date of Term 4.  The April 16th, 2022, dismissal letter had new false accusations attached and showed more attacks on Plaintiffs character.

Despite being in a 14 hour different time zone, working full time+ ( 50+ hours per week), taking care of his family, and trying daily to resolve the nightmare that his professors were putting him through with the extra demands; Carber was able to finish all his assignments for Term 4 before being dismissed. The experience was very stressful, and Carber had sleepless nights and became upset that he was being cheated out of his contract for education that he bought into, but he wanted to complete the program and its efforts shown. Remorse set in and Carber stressed that the PIP was not being taken seriously. Bill Gillespie admitted during Term 4 that he didn't think any of the PIP statements stemmed from EDU- 765 Term 1 class. (See evidence D-2 ) In fact, three of the write ups did in fact come from the very first assignment Carber wrote in Ann Yehle "Intro to Principalship" class. Carber was never given access to Ann Yehles online class and this shows that he was asked to redo assignments that he no longer had online access to. Carber called UWLAX tech support and asked "who grants permission to access previous terms 1-3 classes?" and Tech support said in Minute mark 8:25  the reason why you don't see it in Canvas is that it was set to *"restrict students from viewing course after term end*

*date*". (See evidence D-1) When professor Bill Gillespie told Carber to redo assignments from prior completed terms without giving any online access, this is an example of how UWLAX erected barriers with the PIP that Plaintiff could not cross.

**6)** UWLAX said in the Letter of Intent to Dismiss that Carber was "Unwilling to attend meetings" when in fact he had attended all 9 cohort meetings throughout Terms 1-4. Once retaliation started, with the Letter of Intent to Dismiss- Professors Bill Gillespie and Ann Yehle would not respond to his emails about how to move forward amicably and regarding graduating as contractually agreed to.  There are many emails and attempts from Carber to prove that most of his communications were ignored and UWLAX had shown "unwillingness to meet" with him despite knowing Carbers work schedule and time zone differences. Ann Yehle ignored his emails to meet and discuss being dismissed. The March 12-15th email correspondences show that Carber had given Bill Gillespie his work schedule and times available, yet Bill Gillespie ignored Carbers' reasonable request for a different meeting time as he was working and teaching a class at 10am on March 15th for his newly contracted job. UWLAX knew this as stated in Evidence and still decided to find fault and disregard communication that the Plaintiff earnestly made before March 15th at 10am. (See evidence C-2 )

**7)** UWLAX said in the Letter of Intent to Dismiss that Carber had made "Inappropriate comments related to individuals who are LGBTQ+." (See evidence C-6 )

Plaintiff never made any inappropriate comments of such. UWLAX is being unreasonable because this new statement lacks any real reason provided. This false accusation was not mentioned in the PIP or Letter of Intent to Dismiss yet it is being mired in the dismissal letter. Any schoolwork with LGBTQ+ references were given good grades.  Carber has friends that are part of LGBTQ+ community and there is no proof of such inappropriate behavior.

**8)** After being discriminated against, retaliated, ignored and approaching dismissal, Carber began looking for legal help to try and understand how to legally proceed.  Carber first hired Bachman Attorney, whom was a member of ACLU for a meeting to discuss the legalities. (See evidence B-6 ) Carber, due to limited funds, hired Bachman Attorney to mediate the situation so he paid Bill Reil $2,500 to draft an appeal letter to UWLAX and act as a reasonable mediator. Later on Bill Reil was paid another $1,000 to mediate with UWLAX a plan for graduation. UWLAX continued to retaliate and neglected to find a reasonable solution with Bill Reil to allow Carber to finish the degree that he had been paying for with his own money.

Attorney Reil met by phone with Mr. Carber many times and mediated with Marcie Wycoff-Horn. She offered in an email of October 2023 that if Carber was physically in USA, that he could possibly be designated a principal to finish Term 5.  Carber and his spouse contracted Covid during December 2022 and entrusted Bill Reil to get the proposal in writing with clear sequence, scope and costs associated with graduating as Carber paid another out of pocket expense of $1,000 to conclude what Marcie Wycoff-Horn of UWLAX

had stated.  Bill Reil exhausted the additional $1,000 funds to get her proposal in writing.

Because Bill Reil was unable to successfully mediate with UWLAX, it shows that UWLAX

continues to be unreasonable and give plaintiff a feasible plan towards online graduation.


**9)** Even after being dismissed, UWLAX continued to retaliate against Plaintiff as UW

Attorney sent a letter on April 6th, 2023, which had raised new barriers and demands.

UWLAX was demanding that Carber retake classes that were already paid for, completed

and graded yet there was little detail about how this could be done. Attorney Reil was given

a new set of unreasonable demands that included retaking 4 classes which could equate

to completing an additional 2 Terms.  The demands did not include any costs, credits,

refunds or additional time frames needed to accomplish retaking the already graded, paid

for and completed coursework classes again.  There were also new false character

accusations added into the proposal from Wisconsin and the plan lacked any real solution

to the problem UWLAX created as to whom could serve as Sight Supervisor.  After working

for almost a year, mediator Bill Reil failed to mediate the nightmare scenario that Bill

Gillespie created for Carber. Bill Reil had exhausted all of the $3,500 funds paid to him to

find a means to finish the degree that Carber was paying for.  Bill Reil was unable to resolve

the nightmare scenario UWLAX created for Plaintiff and stopped mediating after UWLAX

sent their April 6th, 2023, demand letter that Carber must retake the 4 classes which

already received good grades. (See evidence C-7)

**10)** Carber and his family came back to the USA in July of 2023. With Bill Reil no longer being employed, Carber alone started corresponding with UW Attorney Matt Lind about the new barriers being raised, the lack of 24-hour notices for the February 15th and March 15th meetings, and how Dr Vance was, and still is ready to be Carber's Sight Supervisor. UW Attorney Matt Lind continued to show disregard and care as he used bully words as he said in a phone meeting that Carber was "Kicked Out…. And would not return to UWLAX for a long time." during an October 11th, 2023, meeting. (See evidence E-4) By mid-2024 Carber had exhausted all funds, energy and time trying to recover from these breaches of contract, and had no other choice but to take UWLAX to Federal Court for causing harm to Plaintiff by shocking, stressing, breaking contract, stunting his career, ect…

UW Attorney Matt Lind did not give much explanation as to why the barriers were raised since the April 2023 letter was sent which emphasized that Carber now re-complete 4 classes (3 ED Research and an Inclusive Pedagogy Part one of two.) that were already paid for. UW Attorney Matt Lind said because the online student would be an online student in USA, and not online in China, student must redo 4 classes. This is a clear breach of contract as Carber was never made aware back when he signed up for the 5-term online program time length that it would be extended to 7 terms because of redoing the 4 classes again.

In the April 6th, 2023, letter, UW Attorney Matt Lind mentions unreasonably *"Mr. Carber would need to redo the work for his research project that he started in EDU 641, EDU 642, and EDU 743, as the previous research project he worked on in those other*

*classes was premised on the assumption that he would complete his research on Chinese students learning English in China. Those classes are directly devoted to all of the necessary steps to preparing a research project. Therefore, if Mr. Carber were to complete his fifth semester in the U.S., he would need to redo the work prerequisite for EDU 744 on that basis"* (see evidence C-7)

Carber is asking the courts to **hold UWLAX responsible for providing inaccurate information about degree requirements. See Olsson v. Bd. of Higher Educ. Case, 402 N.E.2d 1150, 1152 (N.Y. 1980).** UWLAX had promised only 5 Terms until Graduation, then April 6th Letter of 2023 changed the original contract and demanded false information about degree requirements as UWLAX mentioned recompleting 4 more classes which would be at least one or two more Terms to be redone in order to graduate.

**11)** UW Attorney Matt Lind should not be asking Carber to redo and retake all his completed Research classes because he had already finished 3 of the 4 Research Projects classes correctly with Professor Bonnie Roscovius. The Research and Data was collected, analyzed and put together into the Rought draft that was due by the 3rd of the 4th Research class. The fourth class is only for publishing and finishing the 2nd or 3rd edit of the rough draft already completed. EDU Research Professor Bonnie Roscovius assured Carber of this. Bonnie Roscovius was Plaintiffs only other professor besides Bill and Ann. Bonnie and Carber had a meaningful relationship and worked well together. Carber had finished his research paperwork, collected data samples, compared with other sources and was ready to complete writing his final draft from his completed rough draft. The Term 5 Research project class to be completed could be done in USA or China because Plaintiff had already collected enough data, and the experiment was completed. Starting Terms 2, 3, & 4,

Carber only had two professors primarily teaching classes because Ann Yehle stopped teaching classes for Terms 2-4. Even though Ann taught only one class for Carber, she would show up to Bills graded group cohort meetings but that's about it. Bonnie Roscovius would teach one research class per term for Plaintiff and Bill Gillespie would teach two other classes during Plaintiffs enrollment of Terms 2,3, & 4. Bonnie Roscovius was not part of the "Team" that dismissed Carber or gave the PIP. Bonnie Roscovius name was never brought up in the PIP that demanded Carber needed a new Practicum Sight Supervisor. Bonnie Treated Carber like a normal student and never asked him to redo any classwork that was already graded and completed.  Carber met with Professor Bonnie once per Terms 2, 3, & 4 to make sure he was on track towards successful graduation. During Term 4 meeting with Bonnie Roscovius, Carber asked her if she knew anything about Bill Gillespie sending a PIP and she stated that she didn't talk to him since about 2 months ago and Bill didn't say anything about Carber to her.

**12)** Joe Gow was the chancellor for UWLAX. His administrative actions leading UWLAX showed gross misconduct as he was recently relinquished from his duties as Chancelor of UWLAX in 2023. Joe Gow was involved in UWLAX top level administration and yet he was part of an organization that was in disarray because Joe Gow said he was fired for making porn and posting it publicly online for the last 10 years.  Plaintiff was forcefully removed and dismissed from the program while the Chancelor was still exposing his junk to everyone on a porn site.  This example shows how the Organization was suffering from a toxic environment created by the upper-level management as it trickled down to students. Carber was ignored by Joe Gow and his messages for help were ignored. UWLAX gave Joe

Gow a teaching position for his inappropriate behavior while Carber was dismissed

completely from the School for his good grade behavior.  Joe Gow is still employed by

UWLAX as a teacher currently.  (Reference YouTube Link.

https://www.youtube.com/watch?v=BhpwyQui7ZU)


**13)** UWLAX created lies to smear Carber and forcefully remove him from the

program.  Carber was never problematic in his first 3 terms of classes and to go back and

say he was problematic is a lie because plaintiff earned good grades.  Why did Bill Gillespie

make up stuff about Dr. Vance, because the lies UWLAX created smeared Plaintiff in a

campaign of lies that cornered him. Plaintiffs Professors forcefully removed him from the

program for the problematic lies they crafted.  Professor Bill Gillespie and Ann Yehle are

clearly liars because of their own words. Either Bill Gillespie and Ann Yehle lied when they

gave Plaintiff a 4.0 gpa of good grades, or they lied when they said Carber should

recomplete things from the classes that had already received good grades! (see evidence

B-5) UWLAX created lies that are ambiguous and full of deceit that have broken Plaintiffs

Enrollment contract as well as his first Amendment rights. The needing a Sight Supervisor

lie made up in Term 4 is fabricated because Dr. Vance was actively involved before starting

the program as well as for assignments completed during Terms 1, 2, 3, & 4.  All of the

remarks about Plaintiffs professional disposition were lies that were not mentioned in

detail during the Letter of Intent to Dismiss or PIP.

**14)** UWLAX accepted Plaintiff along with his designated Sight Supervisor Dr. Vance on 2-8-21 but on 2-14-22, Bill Gillespie broke the UWLAX contract and created a barrier to stop Plaintiff from Graduating. The 2-14-2022 PIP was unreasonable. The March 15th, 2022, Letter of Intent to dismiss was unreasonable. UWLAX continued to show unreasonableness as they demanded the online student retake 4 already completed & paid for classes. Plaintiff was unreasonably dismissed from UWLAX MSED program and hired Bill Reil mediator to resolve the situation, but it just led to UWLAX raising higher barriers in the new letter of demands dated 4-6-2023 which shows UWLAX unwillingness to honor their end of the contract and provide a full education of services with degree and certification awarded which was paid towards during completion of Terms 1,2, & 3. ***During the case of Guckenberger v. Bos. Univ., 974 F. Supp. 106, 150 (D. Mass. 1997) ("Under Massachusetts law, the promise, offer, or commitment that forms the basis of a valid contract can be derived from statements in handbooks, policy manuals, brochures, catalogs, advertisements, and other promotional materials")*** Plaintiff is stating that the terms of the student- UWLAX university contract was derived from "catalogues and manuals, bulletins, registration forms and other institutional documents shared and communicated during the initial application process. (See evidence A-1 : A-6 )

The UWLAX Enrollment contract that was valid came from the advertisements and promotional materials that Carber bought into online. Plaintiff questioned and asked UWLAX faculty before entering contract many questions regarding how the program would lead towards graduation and completion. Carber's contract was broken by his own Professors as they used their power to deny him further enrollment of Term 5. The

statement regarding Dr. Vance being approved for finishing his Practicum class that Bill

Gillespie said February 8th, 2021, would unreasonably be changed later on February 14th

2022 that Dr. Vance was no longer approved for conducting his online Practicum class and

he was given a deadline of April 5 2022 to find a new Sight Supervisor.   UWLAX Attorney

Matt Lind said Dr. Vance was never approved but the communications on February 8th,

2021, during the initial enrollment clearly show she was accepted and allowed to be

Plaintiffs Sight Supervisor. (See evidence A-1)

**15)** The nightmare scenario that tenured UWLAX professor Bill Gillespie Created for

Jeremiah Carber is an example of Bully behavior and how it can snowball and harm a

person's life.  UWLAX lack of care and regard for Carber as a student shows there was no

aid or student due process to Plaintiff from these unreasonable actions that threatened

and cornered him.  Giving a person in a 14-hour different time zone less than 24-hour

notice to a meeting and then blaming them for "Unwillingness to meet" is a false

accusation and attack on their character. Despite Carbers' reasonable dedication to

resolving this matter, UWLAX continued to breach their side of the contract and not honor

the original agreement that was legally tendered by Plaintiff. The deal was that Carber was

in China and purchased enrollment to complete the master's 5 term program using Dr.

Vance as his mentor and designated sight supervisor.  (See Evidence A-1) UWLAX agreed to

these terms but later did not hold up their end of the bargain. During Terms 1, 2 and 3, there

were no complaints about Dr. Vance as she was actively involved in completing UWLAX

assignments with Plaintiff that involved interviews etc... To pull the rug out of beneath

Carber and say for the first time ever in Term 4 that Dr. Vance is no longer acceptable as his

sight supervisor was unreasonable. To tell a student it is an opportunity to withdraw and exit the program is unreasonable. UWLAX neglected their responsibilities to provide the full educational experience for plaintiff while other students were allowed to. Bill Gillespie used his tenure and power to carry out actions that harmed Plaintiff. Joe Gow, Ann Yehle, Patricia Marcos, Kara Ostlund, Matt Lind, and Marcie Wycoff-Horn were all employed by UWLAX and none of them tried to help the Plaintiff who was being kicked out of the program with no regard to the monies and time he invested into the program. (See evidence C-2)

**16)** Carber was unreasonably dismissed on May 6th and given a letter grade from Bill Gillespie that didn't match UWLAX grading percentage scale. Carber's March 18th outstanding complaint was never addressed by UWLAX. Plaintiffs' grievance was ignored which shows that his student due process rights were trampled on as the University continued to show little to no support for the contractual agreement that was first made when Carber and UWLAX created together before entering into the first Term of the MSED program. That agreement was to render reasonable educational services with an awarding degree and certificate for monies tendered as the UWLAX program had promised. After Bill Gillespie pushed Carber out of the program, plaintiff was unable to recover even with the help of Bill Reil who was hired to mediate the situation.

**17)** Plaintiff suffered irrevocable harm and injury from UWLAX actions and is requesting to Courts that UWLAX pay Plaintiff for Special Compensatory damages; loss of

potential lost wages and career income of two million dollars ($2,000,000) Plaintiff is very

worried his career is ruined as she struggles to move on from being dismissed, while being

encumbered by so much time and energy trying to move on.

Because of the onslaught actions resulting in Plaintiff being kicked out and

dismissed from UWLAX, Plaintiff is suing for General Compensatory Damages of two

million dollars ($2,000,000 ) for emotional stress, harassment, discrimination, violated first

amendment rights and ongoing dismissiveness.  UWLAX shown as they were disregarding

support for Plaintiff and had left him behind to not graduate even though he had a perfect

4.0 gpa for Terms 1 through 3.

Lastly Plaintiff is requesting the Courts to grant Punitive Damages in hopes that

other Universities will never dismiss a student after inciting false accusations of a students

character which have no substantial backing. When UWLAX through discriminative and

dismissive actions continued to adversely affect and haunt Plaintiff causing pain and

mental anguish.

**18)** Plaintiff mentioned that he had to find a new job because his first contract had

ended, therefore he had to move from one major city to another. Carber also said he was

under bereavement and was dealing with a death in the family. Did UWLAX take those

opportunities to be helpful and affirmative? Carber does not remember that. The Plaintiff

came under shock and was under emotional stages as he was being forced to deal with a

broken contract that was unable to be mended as more and more people representing

UWLAX did not reasonably help. Plaintiff was solicited a program that would be completed in Terms 1-5, but due to UWLAX continued unreasonable actions stemming from Term 4, Plaintiff suffered in a contract that was not being honored by Defendant. Carber has unreasonably spent so many more hours trying to mend the broken contract that he could have used that energy towards completing his Practicum class, Research class, and Inclusive practice II classes remaining. UWLAX took away the plaintiff's opportunity for Graduating in June 2022 away from him and continued to be unreasonable.

**EVIDENCE INDEX:**

Accepted into Program- Contract was established:   A-1 through A-6

A-1   2.8.2021 Bill Gillespie confirms Dr Vance as designated Sight Supervisor- Re_ Dr Vance. Supporter for Jeremiah Carber

A-2   2.11.21 Bill Gillespie confirms acceptance into the MSED program

A-3   2.5.2021 Accepted into UWLAX MSED program- Re_ UW-La Crosse Admissions- Student Center (WINGS) Access Information

A-4   2.9.2021 UWLAX Jenny Holm Admission Acceptance Email

A-5   2.9.2021 UWLAX Jenny Holm sends Welcome Spring 2021 Course Registration

A-6   2.3.2021 Please call Bill tonight instead of Cindy

PROOF OF PAYMENTS for Educational Services Contract   B-1 through B-4

B-1   Term 1 Spring 2021- Account Summary Carber

B-2   Term 2 Summer 2021- Account Summary Carber

B-3   Term 3 Fall 2021- Account Summary Carber

B-4   Term 4 Spring 2022- Account Summary Carber

B-5   Transcript UWLAX Principal Cert prgm

B-6   4.30.2022 Payment Receipt-The Bach Law Firm LLC for $300


Unreasonable Actions C-1 through C-7

C-1   PIP attacks Carber and creates barrier 2.14.2022

C-2   March 12-15 2022 Email correspondences

C-3   OFFICIAL CORRESPONDENCE OF LETTER TO DISMISS

C-4   Received on March 26th- the March 15th Letter of Intent to Dismiss

C-5   March 31st- Response to Letter of Intent to Dismiss

C-6   April 19th, 2022, Dismissal Letter Received

C-7   New Raised Barriers April 6th, 2023, Letter


PIP was Unreasonable D-1 through D-3

D-1   Canvas Support

D-2   Bill  doesn't know PIP relates to EDU-765

D-3   Final grades for Term 1- Ann  Yehle class- Principalship 765- Yet was given a PIP in Term 4 from mostly this class.


Mediation Attempts E-1 through E-4

E-1   Carber - Appeal to Wycoff-Horn 08-02-22 SENT

E-2   Oct 11th Marcie Wycoff-Horn proposes finishing practicum in USA.

E-3   Action Research Timeline

E-4   Transcription Oct 17th 2023 meeting with MR. Lind

E-5   March 15th Complaint to UWLAX

E-6   Barbara Franks Qualifications

Re: Dr Vance. Supporter for Jeremiah Carber

From:  Bill Gillespie (bgillespie@uwlax.edu)

To:    carber911@yahoo.com

Date:  Monday, February 8, 2021 at 08:07 AM PST



Hi Jeremiah,

Thank you for the e-mails. You are on the right track. Your site supervisor sounds like she will be a great mentor for you. Thank you for including the attachments also. We have a ZOOM meeting scheduled for tomorrow, Tuesday at 5:00 PM Central time. If you are able to join us, great, if not it's okay. I realize with the time difference it may not work out all the time. Here's the link: https://uwlax-edu.zoom.us/j/89139987947?pwd=NC8rREw1TnNtb29pSTE1ZFpzVDQvdz09

---

### Join our Cloud HD Video Meeting

Zoom is the leader in modern enterprise video communications, with an easy, reliable cloud platform for video and audio conferencing, chat, and webinars across mobile, desktop, and room systems. Zoom Rooms is the original software-based conference room solution used around the world in board, conference, huddle, and training rooms, as well as executive offices and classrooms. Founded in 2011, Zoom helps businesses and organizations bring their teams together in a frictionless environment to get more done. Zoom is a publicly traded

uwlax-edu.zoom.us

---

Have a good week,
Bill

Bill Gillespie, Ph.D.
*Program Director of Educational Leadership*
*Institute for Professional Studies in Education*
*268 Morris Hall*
*1725 State Street*
*La Crosse, WI 54601*
608-785-5410

*"May your choices reflect your hopes, not your fears."* Nelson Mandela

---

**From:** Jeremiah Carber <carber911@yahoo.com>
**Sent:** Saturday, February 6, 2021 1:02 AM
**To:** Bill Gillespie <bgillespie@uwlax.edu>
**Subject:** Dr Vance. Supporter for Jeremiah Carber

I just spoke with Dr. Vance (Merri Vance Allen- Wallace) and she said she would gladly help with anything I may need to finish my practicum at UWLAX.

Attached below is her documents that she gave me: copies of her Goergia Ed Certs, most recent College

Diploma, along with the stuff you need to do in order to use them abroad. (notary, state seal, and affidavit.) She is supportive, and just as I thought, a very straightforward, focused lady who has a wealth of knowledge. Also in my 8 years experience working in China at top schools, She is the only one I know of whom with such an amazing experience in the Education field. She is very fond of cats too.

While we are on the topic of Dr Vance, I am also attaching below the Letter of Rec that she gave me this past Feb 2020.

Her Wechat ID is VanceBlue1

She read my mind before I could ask for her email in case you would like to talk/email with her.
Her **personal email is Wabccat@Charter.net**
then she replied her **school email is Merriwallace@gmail.com**

Again, in China, everyone uses Wechat platform which with a simple free internet connection or $6usd/month cellphone plan with 5 gb data plan, you can voice or video call as well as send text messages, pictures ect... Mostly people use it for sending money/purchasing. Alipay also is a big one... Its amazing how fast things are changing because of technology.


Jeremiah Carber

Your in!



From: Bill Gillespie (bgillespie@uwlax.edu)

To: carber8480@uwlax.edu; carber911@yahoo.com

Cc: ayehle@uwlax.edu

Date: Thursday, February 11, 2021 at 02:52 PM PST

Hi Jeremiah,

I just checked your status, and you are now enrolled and have an e-mail address. You should be able to enter Canvas and see the course Modules so you can get started. I entered you in Group 1 for the Discussion and Group Project. Enter People in the left-hand column to see your group members.

Sorry, we missed you on Tuesday. I think you were in the Zoom call a day early. Let us know if you can join us for the remaining Zoom calls. I realize the time difference may not make this possible however I am recording the meeting so everyone can watch them at their leisure. I will e-mail you a link to the first one we had on Tuesday.

Welcome aboard,
Bill and Ann
Bill Gillespie, Ph.D.
*Program Director of Educational Leadership*
*Institute for Professional Studies in Education*
*268 Morris Hall*
*1725 State Street*
*La Crosse, WI 54601*
608-785-5410

*"May your choices reflect your hopes, not your fears."* Nelson Mandela

## Re: UW-La Crosse Admissions-Student Center (WINGS) Access Information

From: Jeremiah Carber (carber911@yahoo.com)

To: admissions@uwlax.edu

Cc: helpdesk@uwlax.edu

Date: Thursday, February 4, 2021 at 07:47 PM PST



Dear Help Desk,

I try to:
*activate your NetID/WINGS Username you will need:

1. Your **Student ID: 959922259**

2. Birthdate

Activate your NetID/WINGS Username here. *

but the above "here" link is not working. I was bringing me to a webpage that wanted me to retype yes in the word box, then submit button "next" but for some reason the next submit button is not functioning or submitting as it should.

Then, I try again and again, and I was able to get to this page with the four boxes below, but a similar error where the page just sits there. I am using firefox HTML browser which most MySQL forms work with unless maybe I need to use windows Explorer? IDK.

Thanks for your help, Im looking to start right away,



Jeremiah Carber

On Friday, February 5, 2021, 12:00:25 AM GMT+8, admissions@uwlax.edu <admissions@uwlax.edu> wrote:



Dear Jeremiah

The University of Wisconsin-La Crosse is excited to bring you our WINGS Student Center. As an applicant, your Student Center will provide you with many useful features to track the status of your application. Your first step to accessing your WINGS account is activating your NetID/WINGS Username. Once activated, you can log into your WINGS Student Center.

To activate your NetID/WINGS Username you will need:

1. Your Student ID: 959922259

2. Birthdate

Activate your NetID/WINGS Username here.

Next, log into WINGS here OR go to www.uwlax.edu and select "WINGS", located near the top right corner of the homepage.

Your WINGS Username is your NetID: carber8480

Your WINGS password is your newly created NetID password.

**WINGS Student Center Features for Applicants:**

- Admissions:  Track the status of your application.
- To Do List:  See what you need to complete as you progress through the application process.
- Personal Information:  Update your information to ensure its accuracy.

**WINGS Student Center Features for Current Students:**

- Financial Aid:  Track the status of financial aid packages.
- Academics:  View grades, register for classes, view class schedules.
- Finances:  Pay student bill.

Please contact the UW-La Crosse Admissions Office if you have any questions.

Sincerely,

University of Wisconsin-La Crosse Admissions Office

2320 Student Union | 1725 State Street | La Crosse, WI  54601

E-mail:  admissions@uwlax.edu

Phone:  (608) 785-8939 | Fax:  (608) 785-8940

www.uwlax.edu/admissions

## Admission Acceptance

From: Jennifer Holm (jholm@uwlax.edu)

To: carber911@yahoo.com; carber8480@uwlax.edu

Cc: bgillespie@uwlax.edu; ayehle@uwlax.edu

Date: Tuesday, February 9, 2021 at 12:31 PM PST



Hi Jeremiah,

Your application for admission for Spring 2021 to the MSED Educational Leadership 5051/Director of Instruction 5010 was approved today. I am working with admissions and registration to fast track you through for course enrollment. Once we have the courses in your schedule the Canvas program will sync, then giving you access to those courses. The Canvas site syncs around 5 p.m. Central Time each day.

I have attached information on your courses, please use your WINGS profile to register. I've been told that you have been moved forward, so this should be available to you. I have activated the permission for you to enroll for each of the two courses, you are section 595 for both courses. I will be watching for your schedule to come through. Let me know how it goes.

Also, I cc'd your UWL email to check and see if that is working for you as well.

Thank you,

Jenny

Jenny Holm
Outreach Specialist
Institute for Professional Studies in Education
UW-La Crosse 267 Morris Hall
jholm@uwlax.edu

   Welcome_Spring 2021 Course Registration Ltr_PDELD.pdf
315kB





**EVIDENCE A-5**  January 26, 2021

Hello Educational Leadership Cohort 7,

Welcome from the Institute for Professional Studies in Education (IPSE)! Our team is excited to be working with you on building your future. You have been admitted to the **Masters of Science in Education (MSED) Educational Leadership 5051/Director of Instruction 5010 Emphasis –**program that is scheduled to start for the Spring 2021 term on February 1st. This program is 6 terms and results in a Master's degree, eligibility for the WI Principal 5051 and Director of Instruction 5010 license. If you haven't already, go to the website for this program, there is a great deal of information that is important for you to know.

At this time, I need you to use your WINGS account to get registered for all your courses as soon as possible before **Thursday, January 28th**. You are in the **Master's** degree program, so here are the details you need:

Term: **2217 Spring**        Section: **595**

| Subject | Catalog # | Class # | Description |
|---------|-----------|---------|-------------|
| EDU | 765 | 5132 | Intro to Educational Leadership |
| EDU | 766 | 5133 | The Principalship |

The Records and Registration, <u>Registration page</u> is a great resource that can help problem solve any registration troubles. However, you can always reach out to me for help as well.

Spring 2021 is scheduled to begin on February 1st and will end May 7th. Your courses are scheduled to be online, so at this time we do not anticipate that the instruction will be affected by COVID-19 changes. Should a situation arise, your course instructors will help you figure out the process of how to handle it. We are here to work with you to complete your program.

Here is a listing of books that you will need:

| Course | Book Title | Book Author | Book Publisher | Edition | ISBN |
|--------|-----------|-------------|----------------|---------|------|
| EDU 765 | Flow: The Psychology of Optimal Experience | Csikszentmihalyi, M | Harper Perennial | 1st (2008 version) | 978-0061339202 |
| EDU 765 | The Leadership Paradox: Balancing logic and artistry in schools | Deal, T.E. Peterson, K.D. | Jossey-Bass | | 978-0787955410 |

INSTITUTE FOR PROFESSIONAL STUDIES
269 Morris Hall
1725 State St. | La Crosse, WI 54601 USA

phone 608.785.5411
https://www.uwlax.edu/grad/professional-studies-in-education/
Facebook:
https://www.facebook.com/ProfessionalStudiesinEducation/

An affirmative action/equal opportunity employer

| EDU 765 | Learning First!: A school leader's guide to closing the achievement gaps | Kelley, C Shaw, J.J. | Corwin | | 978-1412966973 |
|---|---|---|---|---|---|
| EDU 766 | The Principalship: A Reflective Practice Perspective | Sergiovanni, Thomas Green, Reginald Leon | Pearson | 7th | 978-0132613646 |
| EDU 766 *this book is optional | Publication Manual of the American Psychological Association | American Psychological Association | American Psychological Association | 7th | 978-1433832178 |

Please note, UWL does not have textbook rental options for graduate courses. You can purchase, rent or borrow from any source you find; you are not obligated to purchase them through UWL.

I want to assure you that besides your course instructors and the Educational Leadership Program Director, Bill Gillespie (bgillespie@uwlax.edu), I am here for you should there be anything that you have questions or concerns about. With that said, I also want to let you know that the IPSE Director, Patricia Markos (pmarkos@uwlax.edu), is always available to address anything with you as well.

I look forward to seeing your course enrollment come through. If you ever have questions or concerns about anything in the program, please just ask.

Sincerely,

Jenny Holm

Jenny Holm
Outreach Specialist
jholm@uwlax.edu



We are still accepting applications for this Educational Leadership cohort. If you know of anyone that might have an interest in being a part of this opportunity, please have them contact me ASAP. Plus, referrals are worth **$200** paid to you.

## Please call Bill tonight instead of Cindy

From: Cindy George (cgeorge@uwlax.edu)

To:     carber911@yahoo.com

Cc:     bgillespie@uwlax.edu; jholm@uwlax.edu

Date:  Wednesday, February 3, 2021 at 07:11 AM PST



Hi Jeremiah,

I just talked to Bill and we should be able to get you in on a spring term start with the MSED-Educational Leadership/Director of Instruction program.

I am going to have you call Bill tonight instead of me and then you two can talk about your site supervisor situation.  If you want to call him when you get up, that would be fine for Bill said he will definitely be available in the 5-6:30pm timeframe our time.  Please try to find out before you call what your potential supervisor has for credentials.  It sounds like from you she should have what is needed, but also think about others in your current school for that would be easier.

Here is Bill's phone number... 920-209-5012  Bill is our Director of the Educational Leadership program.

Bill, here is what Jeremiah's phone number will come up as... 267-932-7000 Harleysville, PA

We are so excite to have you as part of our program!!
Let us know anytime of further questions you may have.

Cindy George
Professional Studies in Education
University of Wisconsin – La Crosse
608-785-5409
Professional Studies in Education web site

Favorites ▾     Main Menu ▾     > Student Financials ▾   > View Account Summary

Home    Add to Favorites    Sign Out

Menu ▾   Search [_____] ⟫   Advanced Search

---

Account Summary

## Account Detail for Term

2021 Spring                          As of Date  08/12/2024

Jeremiah Carber                      200253371

User-defined text (14865,12)

User-defined text (14865,13)



### UW-La Crosse

**Charges**

| Date Posted | Item Description | Amount |
|---|---|---|
| 02/11/2021 | GRAD Non Resident Fee | 3,328.74 USD |
| 02/11/2021 | Registration Fee | 25.00 |
| 02/11/2021 | GR Professional Study in EDU | 2,700.00 |
| 04/16/2021 | Finance Charge | 41.67 |
| 03/17/2021 | Finance Charge | 41.06 |
| 02/17/2021 | GRAD Non Resident Fee Adj | -3,328.74 |
| 02/11/2021 | DLE Canvas Fee | 12.00 |

Total Charges          2,819.73 USD

**Payments Received**

| Date Posted | Item Description | Amount |
|---|---|---|
| 04/21/2021 | WEB ACH Payment | -2,819.73 USD |

Total Payments          -2,819.73 USD

**Self Service Pending Payments**

| Reference Number | Card Number's Last Four Digits | Amount |
|---|---|---|
| | | 0.00 |

Total Pending Payments          0.00 USD

**Financial Aid**

| Date Posted | Item Description | Amount |
|---|---|---|
| | | 0.00 |

Total Financial Aid          0.00 USD

**Anticipated Aid**

| Item Description | Anticipated Aid |
|---|---|
| | 0.00 |

Total Anticipated Aid          0.00 USD

**Admissions Deposit Due**

| Short Description | Description | Due Amount |
|---|---|---|
| | | 0.00 |

Total Admissions Deposit          0.00 USD

**Refunds**

| Status | Long Name | Item Amount |
|---|---|---|
| | | |

Total Refunds          0.00 USD

Term Balance          0.00 USD

Return

Favorites ▾    Main Menu ▾   >   Student Financials ▾   >   View Account Summary

                                                   Home    Add to Favorites    Sign Out

**Menu ▾** | **Search**        ⨠ Advanced Search

Account Summary

## Account Detail for Term

2021 Summer            **As of Date** 08/12/2024

Jeremiah Carber             200253371

User-defined text (14865,12)

User-defined text (14865,13)



### UW-La Crosse
**Charges**

| Date Posted | Item Description | Amount |
|---|---|---|
| 08/10/2021 | Finance Charge | 55.43 USD |
| 05/13/2021 | Registration Fee | 25.00 |
| 07/09/2021 | Finance Charge | 54.62 |
| 05/17/2021 | GRAD Non Resident Fee Adj | -2,773.95 |
| 05/13/2021 | DLE Canvas Fee | 16.00 |
| 05/13/2021 | GR Professional Study in EDU | 3,600.00 |
| 05/13/2021 | GRAD Non Resident Fee | 2,773.95 |
| | **Total Charges** | **3,751.05 USD** |

**Payments Received**

| Date Posted | Item Description | Amount |
|---|---|---|
| | | 0.00 |
| | **Total Payments** | **0.00 USD** |

**Self Service Pending Payments**

| Reference Number | Card Number's Last Four Digits | Amount |
|---|---|---|
| | | 0.00 |
| | **Total Pending Payments** | **0.00 USD** |

**Financial Aid**

| Date Posted | Item Description | Amount |
|---|---|---|
| | | 0.00 |
| | **Total Financial Aid** | **0.00 USD** |

**Anticipated Aid**

| Item Description | Anticipated Aid |
|---|---|
| | 0.00 |
| **Total Anticipated Aid** | **0.00 USD** |

**Admissions Deposit Due**

| Short Description | Description | Due Amount |
|---|---|---|
| | | 0.00 |
| | **Total Admissions Deposit** | **0.00 USD** |

**Refunds**

| Status | Long Name | Item Amount |
|---|---|---|
| | **Total Refunds** | **0.00 USD** |

                    **Term Balance**        **3,751.05 USD**

                                       Return

8/12/24, 12:03 PM                                                    View Account Summary

Favorites ▾     Main Menu ▾     > Student Financials ▾   > View Account Summary

                                                                                          Home    Add to Favorites    Sign Out

        Menu ▾   Search                      ⟩⟩ Advanced Search

                                        Account Summary

### Account Detail for Term

2021 Fall                                   **As of Date** 08/12/2024

Jeremiah Carber                             200253371

User-defined text (14865,12)

User-defined text (14865,13)



#### UW-La Crosse
**Charges**

| Date Posted | Item Description | Amount | |
|---|---|---|---|
| 09/03/2021 | Registration Fee | 25.00 | USD |
| 10/21/2021 | Finance Charge | 58.36 | |
| 09/03/2021 | DLE Canvas Fee | 16.00 | |
| 08/10/2021 | GRAD Non Resident Fee Adj | -4,438.32 | |
| 09/03/2021 | GR Professional Study in EDU | 3,600.00 | |
| 11/22/2021 | Finance Charge | 59.23 | |
| 09/03/2021 | GRAD Non Resident Fee | 4,438.32 | |
| | **Total Charges** | 3,758.59 | USD |

**Payments Received**

| Date Posted | Item Description | Amount | |
|---|---|---|---|
| 09/03/2021 | WEB ACH Payment | -3,501.50 | USD |
| 12/02/2021 | WEB ACH Payment | -4,008.14 | |
| | **Total Payments** | -7,509.64 | USD |

**Self Service Pending Payments**

| Reference Number | Card Number's Last Four Digits | Amount | |
|---|---|---|---|
| | | 0.00 | |
| | **Total Pending Payments** | 0.00 | USD |

**Financial Aid**

| Date Posted | Item Description | Amount | |
|---|---|---|---|
| 12/01/2021 | COVID-19 Federal Grant III | -1,500.00 | USD |
| | **Total Financial Aid** | -1,500.00 | USD |

**Anticipated Aid**

| Item Description | Anticipated Aid | |
|---|---|---|
| | 0.00 | |
| **Total Anticipated Aid** | 0.00 | USD |

**Admissions Deposit Due**

| Short Description | Description | Due Amount | |
|---|---|---|---|
| | | 0.00 | |
| | **Total Admissions Deposit** | 0.00 | USD |

**Refunds**

| Refund Nbr | Status | Long Name | Address Type | Item Amount | |
|---|---|---|---|---|---|
| 176467 | Sent to ePayment Servicer | Other | HOME | 1500.00 | USD |
| | | | **Total Refunds** | 1,500.00 | USD |

|  | **Term Balance** | -3,751.05 | USD |
|---|---|---|---|

Return

8/12/24, 12:04 PM                                                    View Account Summary

Favorites ▾    Main Menu ▾    >   Student Financials ▾   >   View Account Summary

                                                                              Home    Add to Favorites    Sign Out

Menu ▾    Search    ⟫ Advanced Search

Account Summary

## Account Detail for Term

2022 Spring                                       As of Date  08/12/2024

Jeremiah Carber                                                 200253371

User-defined text (14865,12)

User-defined text (14865,13)



**UW-La Crosse**
**Charges**

| Date Posted | Item Description | Amount | |
|---|---|---|---|
| 04/08/2022 | Finance Charge | 49.13 | USD |
| 01/06/2022 | DLE Canvas Fee | 14.00 | |
| 01/06/2022 | GRAD Non Resident Fee | 3,883.53 | |
| 03/09/2022 | Finance Charge | 46.41 | |
| 01/06/2022 | Registration Fee | 25.00 | |
| 05/10/2022 | Finance Charge | 49.87 | |
| 01/11/2022 | GRAD Non Resident Fee Adj | -3,883.53 | |
| 01/06/2022 | GR Professional Study in EDU | 3,150.00 | |
| 01/06/2022 | Graduation Fee | 38.00 | |

                                        Total Charges      3,374.41 USD

**Payments Received**

| Date Posted | Item Description | Amount | |
|---|---|---|---|
| | | 0.00 | |

                                        Total Payments       0.00 USD

**Self Service Pending Payments**

| Reference Number | Card Number's Last Four Digits | Amount | |
|---|---|---|---|
| | | 0.00 | |

                                   Total Pending Payments      0.00 USD

**Financial Aid**

| Date Posted | Item Description | Amount | |
|---|---|---|---|
| | | 0.00 | |

                                     Total Financial Aid       0.00 USD

**Anticipated Aid**

| Item Description | Anticipated Aid | |
|---|---|---|
| | 0.00 | |

                                    Total Anticipated Aid       0.00 USD

**Admissions Deposit Due**

| Short Description | Description | Due Amount | |
|---|---|---|---|
| | | 0.00 | |

                                 Total Admissions Deposit      0.00 USD

**Refunds**

| Status | Long Name | Item Amount | |
|---|---|---|---|
| | | | |

                                        Total Refunds       0.00 USD

                                        Term Balance     3,374.41 USD
                                                            Return

# University of Wisconsin - La Crosse
## Unofficial Enrollment Record - Graduate

1 of 1

**Name:** Jeremiah Carber
**Student ID:** 200253371

**Print Date:** 01/17/2022

 **EVIDENCE** B-5

**Campus ID:** 959922259
**Birthdate:** 09/11/####
**Student Address:** 3835 Olive St
Philadelphia, PA 19104-1645

### Beginning of Graduate Record

**Spr 2021** (1/25/2021 - 5/21/2021)

**Program:** School of Education
**Plan:** Professional Development: Educational Leadership Emphasis

*COVID-19 Disruption*

| Course | | Description | Att | Ern | Grd | Pts |
|---|---|---|---|---|---|---|
| EDU | 765 | Intro to Education Leadership | 3.000 | 3.000 | A | 12.000 |
| EDU | 766 | The Principalship | 3.000 | 3.000 | A | 12.000 |

| | Att | Ern | GPA Att | Pts |
|---|---|---|---|---|
| Term GPA | 4.000 | 6.000 | 6.000 | 6.000 | 24.000 |
| Cum GPA | 4.000 | 6.000 | 6.000 | 6.000 | 24.000 |

Good Standing

**Sum 2021** (5/24/2021 - 8/18/2021)

**Program:** School of Education
**Plan:** Professional Development: Educational Leadership Emphasis

| Course | | Description | Att | Ern | Grd | Pts |
|---|---|---|---|---|---|---|
| EDU | 641 | Educational Research I: Intro | 2.000 | 2.000 | A | 8.000 |
| EDU | 767 | Data-based Decsn Mkng Instruc | 3.000 | 3.000 | A | 12.000 |
| EDU | 768 | Supervision and Evaluation | 3.000 | 3.000 | A | 12.000 |

| | Att | Ern | GPA Att | Pts |
|---|---|---|---|---|
| Term GPA | 4.000 | 8.000 | 8.000 | 8.000 | 32.000 |
| Cum GPA | 4.000 | 14.000 | 14.000 | 14.000 | 56.000 |

Good Standing

**Fall 2021** (9/7/2021 - 12/30/2021)

**Program:** School of Education
**Plan:** Professional Development: Educational Leadership Emphasis

| Course | | Description | Att | Ern | Grd | Pts |
|---|---|---|---|---|---|---|
| EDU | 642 | Educational Research II: Expl | 2.000 | 2.000 | A | 8.000 |
| EDU | 769 | Leadership & Cultrl Competence | 3.000 | 3.000 | A | 12.000 |
| EDU | 770 | School Law | 3.000 | 3.000 | A | 12.000 |

| | Att | Ern | GPA Att | Pts |
|---|---|---|---|---|
| Term GPA | 4.000 | 8.000 | 8.000 | 8.000 | 32.000 |
| Cum GPA | 4.000 | 22.000 | 22.000 | 22.000 | 88.000 |

Good Standing

**Spr 2022** (1/24/2022 - 5/20/2022)

**Program:** School of Education
**Plan:** Professional Development: Educational Leadership Emphasis

| Course | | Description | Att | Ern | Grd | Pts |
|---|---|---|---|---|---|---|
| EDU | 743 | Ed Research III: Conduct | 2.000 | 0.000 | | 0.000 |
| EDU | 771 | Sch Financ/Resource Allocation | 3.000 | 0.000 | | 0.000 |
| EDU | 772 | Inclusive Pedagogical Prac I | 2.000 | 0.000 | | 0.000 |

| | Att | Ern | GPA Att | Pts |
|---|---|---|---|---|
| Term GPA | 0.000 | 7.000 | 0.000 | 0.000 | 0.000 |
| Cum GPA | 4.000 | 29.000 | 22.000 | 22.000 | 88.000 |

### Graduate Career Totals

| | Att | Ern | GPA Att | Pts |
|---|---|---|---|---|
| Cum GPA | 4.000 | 29.000 | 22.000 | 22.000 | 88.000 |
| Trans Cum GPA | | 0.000 | 0.000 | 0.000 | 0.000 |
| Comb Cum GPA | 4.000 | 29.000 | 22.000 | 22.000 | 88.000 |

End of Unofficial Enrollment Record - Graduate

## Payment Receipt from The Bach Law Firm LLC for $300.00

From:  The Bach Law Firm LLC (receipts@lawpay.com)
To:    carber911@yahoo.com
Cc:    jbach@bachlawfirm.com; awhitaker@bachlawfirm.com
Date:  Saturday, April 30, 2022 at 04:38 AM PDT





## Payment Receipt                                              $300.00

**The Bach Law Firm LLC**                          **Account Holder**
7881 W Charleston Blvd                                jeremiah carber
Ste 165                                            114 bethelehem pik
Las Vegas, Nevada 89117                       colmar, Pennsylvania 18915
(702) 925-8787

## Payment Summary

| | | | |
|---|---|---|---|
| **Account:** | eCheck OP | **Amount Paid:** | $300.00 |
| **Reference:** | jeremiah carber uwlax | **Payment Method:** | eCheck Via FIRST NATIONAL BANK OF PENNSYLVANIA |
| | | **Account Number:** | *****3789 |
| | | **Auth Code:** | evvZteBxhte7mYm0 |
| | | **Payment Date:** | April 30, 2022 04:38 am |
| | | **Transaction Id:** | 63743016 |


POWERED BY
LAWPAY

www.bachlawfirm.com
awhitaker@bachlawfirm.com

 **EVIDENCE B-7**

**William C. Reil, Esquire**
**1420 Locust Street, Suite 420, Philadelphia, PA 19102**
**Tel: 215-564-1635 Fax: 215-564-4292**
**BillReilLaw@gmail.com**

May 9, 2022                                     **BY EMAIL ONLY**
                                                carber911@yahoo.com

          Re:  Jeremiah Carber v. University of Wisconsin
               **Engagement Letter and Fee Agreement**

Dear Jeremiah:

I write to you to follow-up on our initial phone conversation today. You indicated to me that you have been dismissed from the University of Wisconsin, which is a state school. You further indicated to me that this resulted from a situation where the University refused to approve any supervisor for your practicum. You believe that this was a pretext, and the real reason dealt with bias toward you personally, as a result of certain assignments and doctrines taught.

I indicated to you that my retainer would be $2,500 which covers a maximum of 10 hours of my legal time, as indicated in the attached fee agreement. Initially, I would work on a letter of representation to the University President in concert with you. I would request to speak with counsel for the University so that I can fully determine your options. I have enclosed a copy of your fee agreement. By the way, deduct $50 for the costs of wiring and send **$2,450** to me as a retainer.

Sincerely yours,

*William C. Reil*

William C. Reil, Esquire
WCR/cmb

enc.  fee agreement and
      wire transfer instructions

**Student Plan of Improvement**
**Based on the Wisconsin Administrative Standards**



1 = Meets Expectations        2 = Not Meeting Expectations

Highlighted number is current statis for this candidate. All Standards must be met for certification and license.

**EVIDENCE** C-1

**Administrative Candidate: Jeremiah Carber**

**1. MISSION, VISION, AND CORE VALUES. Effective educational leaders develop, advocate, and enact a shared mission, vision, and core values of high-quality education, academic success, and well-being of each pupil.**

**1**                    **2**

Jeremiah was unable to successfully complete the assignment Final Deliverable: School Law Interview & Analysis, thus was unable to meet the standard. He did not attempt to master this assignment or standard and received a below average grade.

Feedback given: You lacked comparison between your administrators views on school law. You were frank about the reason for this. Several good points you made throughout the paper are highlighted and commented on in some cases...

Speaking with two different administrators should have afforded you the opportunity to glimpse into the variant legal related issues faced dependent on the level of need. Unfortunately, you were unable to receive the information you needed to make comparisons due to the different individuals cooperation level when asked the various questions presented.

As you know, school principals may or may not face certain legal challenges during their tenure. In addition, this is an ever-changing landscape in many schools across the U.S. and the world. Ann and I reflect on how given the complexities associated with school law, knowing what you don't know and when to seek the support of others is of critical importance. Also, knowing when you need to slow things down and gather additional information or understanding is key. Support and collaboration from colleagues are very important when dealing with the legal aspects of the school day. I wish you would have been able to have more cooperation with the administrators you interviewed. I understand your circumstances.

**2. ETHICS AND PROFESSIONAL NORMS. Effective educational leaders act ethically and according to professional norms to promote each pupil's academic success and well-being.**

1          2

Professional communication is an absolute necessity for educational leaders.  This includes avoiding communication whereas judgement, sarcasm, and/or flip.  Examples include but are not limited to the following:

+"unless all students all because used care and furniture salesmen, I don't think this school is giving them much hope let alone the tools they need to compete..."

+"He could have had something worthwhile to inform about but instead goes into a top level of nonsense....."

As educational leaders, we need to think about what we say and how our words mirror our actions.  Without doing so, we convey a message that may be unintended and/or create a culture of toxicity.

**3. EQUITY AND CULTURAL RESPONSIVENESS. Effective educational leaders strive for equity of educational opportunity and culturally responsive practices to promote each pupil's academic success and well-being.**

1          2

Jeremiah did not complete the assignment given on this standard. He wrote a paper about multicultural education as a benefit to student learning but did not complete most of the prompts specific to his beliefs and experiences on this subject. He was asked to rewrite the assignment to meet the requirements and standards of the assignment. He did not rewrite the paper and consequently did not master the standard and received a low score on the assignment. Feedback given: You answered the first prompt well but need to elaborate on the second two. Here are the prompts for this paper: "What is multicultural education? What does it look like? How is it different from teaching in a traditional classroom? How do you or would you teach differently in a multicultural classroom setting? What are your experiences with multicultural education? Give some real-life examples of the experiences you have had with multicultural education, find an example online, or use one from the book. Describe the experience telling what you might do the same or differently to create a classroom based on multicultural education? Finally, discuss how you, as a principal, would instill sensitivity and understanding of multicultural education in your school." I am giving you a 7 out of 10 but you can easily change this to a 10 out of 10 with some additional work/editing and resubmission.

**4. CURRICULUM, INSTRUCTION, AND ASSESSMENT. Effective educational leaders develop and support intellectually rigorous and coherent systems of curriculum, instruction, and assessment to promote each pupil's academic success and well-being.**

1          2

**5. CARE AND SUPPORT. Effective educational leaders cultivate an inclusive, caring, and supportive school community to promote each pupil's academic success and well-being.**

1          2

Schools are microcosms of society.  Therefore, the complexities of the human condition bleed into our schools.  As educational leaders we indeed recognize the and time and place to have certain conversations, share information, etc. We must also consider the context and relationship we have/don't have with our school community.  For example, in one of your deliverables you wondered, "How dd this man you became a woman get through how many years as an elementary principal?  Did anyone raise a hand and say your personal life is inappropriate for leading others in an elementary school?  When he says his middle name of Shannon means "wise river" I wonder how many rivers this man touched....."  As we know, we want the adults in our schools to reflect the population writ large.  This includes individuals who have transitioned.  Diversity is an asset in our schools not a limitation.

Personally, educational leaders may not agree with the beliefs, choices, etc. of their staff, students, and the families of their students.   However, a professional educator can disagree yet still maintain a high-quality collegial relationship.

**6. PROFESSIONAL CAPACITY OF SCHOOL PERSONNEL. Effective educational leaders develop the professional capacity and practice of school personnel to promote each pupil's academic success and well-being.**

   1           2

Jeremiah refused to work with a group of students on a project involving the rights of Immigrant children attending public schools in the US. He did not understand the prompt the way his group members approached it and did not work with his group members to try and fulfill the assignment in a way that everyone found acceptable. His professor had to mediate the situation by trying to reach a compromise that was acceptable to everyone in the group. He refused and therefore would have received no credit for the assignment except that the assignment was set up, so everyone received the same passing grade. This is an example of his inability to work with others on a school staff that would benefit student learning.

Feedback: ...The historical and political views given in the posted articles is interesting information and I appreciate that it is included however I would ask that you label what it is and the purpose for including it. If you want to include it in the final presentation to share with the other groups, then I would ask to meet with you to discuss rewriting some of the information. This meeting never took place, and the professor modified the assignment before presenting it to the other groups for feedback.

**7. PROFESSIONAL COMMUNITY. Effective educational leaders foster a professional community of teachers and other professional staff to promote each pupil's academic success and well-being.**



**8. MEANINGFUL ENGAGEMENT. Effective educational leaders engage families and the community in meaningful, reciprocal, and mutually beneficial ways to promote each pupil's academic success and well-being.**

1                              2

Educational leaders are part of an expansive community.  A diverse community and whereas we can do our best to put ourselves in the shoes of others, we can't know the lived experiences of others and how they impact as they do.  Hence, an inclusive and non-judgmental approach or an approach whereas we seek to understand non-negotiable.  We are not able to engage our students, families, and communities when our approach is judgmental.

For example, in one of your deliverables you address a principal who is transitioning from male to female.  You wrote, "This is where I wonder what his heart because his concern be with student learning and how well they are going to do now that they will now have a woman principal?  He doesn't not make one iota about how this gender change going to add value and sustenance to the school."

Your approach to this principal and their transition makes many assumptions to include assuming this principal didn't consider the impact of her decision on the lives of her students.  This also intimates that somehow because of her gender change she doesn't care about her school and the learning of her students.  How can you know this?  Further, how does gender (e.g., she, him, sie) impact principal capacity from a gender standpoint?

**9. OPERATIONS AND MANAGEMENT. Effective educational leaders effectively manage school operations and resources to promote each pupil's academic success and well-being.**

1                              2

**10. SCHOOL IMPROVEMENT. Effective educational leaders act as agents of continuous school improvement to promote each pupil's academic success and well-being.**

1                              2

**11. TEACHER STANDARDS. Effective educational leaders understand and demonstrate competence in the teacher standards under s. PI 34.002.**

1                              2

Additional evidence is necessary in order to demonstrate mastery in this area.

**Expectations for Improvement:**

These are the areas of improvement we will expect to see during the remainder of the program:

1. Practicum Site Supervisor Requirements

Site Supervisor is required to meet the Wisconsin PI34 qualifications which include:
- Current WI 5051 Principal license or the equivalency if from another U.S. state
- Show proof of experience - supervision of teachers

Jeremiah requires an on-site practicum supervisor that meets the necessary requirements as included in WI Department of Public Instruction guidance (PI34). Hence, please submit the following materials by Tuesday, April 5, 2022 US Central Time

+Name of on-site practicum supervisor(s)
+Credentials of practicum supervisor
+Contact information of practicum supervisor (e.g., email, phone number, mailing address)

2. Jeremiah will submit deliverables that align to the requirements as described in the course materials.

3. Jeremiah will use professional language in all course deliverables. Jargon and sarcasm should not be included.

4. Jeremiah will meet the requirements of the WI Administrative Standards by showing mastery through the completion of all deliverables/assignments both past and current as outlined in the Student Improvement Plan.

Jeremiah will meet the expectations outlined in the Student Improvement Plan by Tuesday, April 12th at which time a meeting will be held to determine the outcome of the plan.

**Educational Leadership Program Director/Instructor/Student Advisor Signature:**
**William Gillespie, PhD**                          **Date:**

**Instructor/Student Advisor Signature:**
**Ann Yehle, PhD**                                        **Date:**

**Student Signature:**                                    **Date:**



**EVIDENCE**

**From:** Jeremiah Carber
**Sent:** Tuesday, March 15, 2022 11:27 AM
**To:** Bill Gillespie
**Subject:** RE: E-mail response- please confirm Monday or Tuesday night 8:35pm

Hi Bill,

I do not understand what frustration your thinking I have from changing jobs? Please do not say you understand my circumstances, because you do not. I told you about my situation working in China from the start of the program. You could see from my assignments, that China is very different from schools in the USA. You knew my contract was only for 1 year term and I would have to find new employment if my contract doesn't renew which I had told you as I have been very transparent with how things are different here. You never told me I could not take a new contract while working the same place of China. You also knew that Dr. Vance did not work with me in Hongshan school of China because I told you that she had worked with me for 1.5 years at the school before Hongshan, but this was allowed as we share a very good communication and she did contribute to at least one assignment per term through out my last 3 terms. She still responds promptly to any messages I send her as she volunteered to be my mentor and "site supervisor". How can you change that so late into the program?

If your going to quote Wisconsin law, then you need to tell me what Chapter, section, subsection & parts your interpreting, because when I read those four requirements you expressed in the last email, I could clearly see the last requirement (d) states "Clinical students" . Likewise, the law writes that there are duties that the program needs to offer to the student doing the program which I can see now they are not being performed thus leading to this dispute. If those duties were being performed, then there would be a resolution attained by now and a

clear plan of how to proceed. I will be pursuing legal counsel and litigation if this does not get resolved in an appropriate manner with no further retaliation from my professors. I do not want to litigate this matter, but from what I read, your misunderstanding the law and if you want to say "In my case" like its some legal case that your inviting me into, then we will see how well that goes because I have tried repeatedly to resolve this to the best of my ability and your not cooperating, nor is your program inclusive and meet my needs as an online student working in China, you keep outlining this site supervisor which in my mind is not a roadblock because I have both Barbara Franks and Dr. Vance to help me observe and accomplish real work.

I have asked my employer and I can not change my current schedule, so maybe you can try to find another time that suits for you as well as me. You have my schedule. You do not have any options or remedies for me for me to stay in the program anyway, so if all you want to do is meet and discuss me withdrawing, then I do not see why this meeting is important to me.

How is "exiting a program" considered an opportunity? You did write, "The Improvement Plan was set up to give you an opportunity to improve academically and exit the program if the Practicum requirements were not met." If my employer doesn't say I am fired, but says, "just take your stuff, and leave now." Who am I to argue about keeping my job? The difference is that I am paying this University to educate me and by you saying this twice now in different words, your clearly expressing that you want me out of the program. This is unbelievable, and unacceptable on your part as an educator.

Why didn't you tell me my sponsored site supervisor was not accepted after I sent you her qualifications twice, (before starting term 1, and after Term 3 finished) In fact, you still have not said she doesn't meet requirements until today as you are saying that because I shifted my work in China to a new employer that would affect my site supervisor. Your not trying to give me any feasible options to resolve this matter that you failed to demonstrate, guide, and direct me on a course of action

that is well within my scope of ability. The problem is Bill, Ann, & Pat, that you're the gate keepers of what meets the requirements, so how do I continue in this program if you are not cooperating. I need an explanation at least about why Dr. Vance and with cooperation of Principal Franks doesn't meet these requirements. Please stop burdening me with proof and hardship. You're the teachers who should be finding a way for me to accomplish these practicum goals, tasks, & needs while I am restricted with travel restrictions, Covid measures in these last few years and still currently as many cities including Wuhan are now under quarantine measures. While I am doing this program, I must provide for my family, and pay for cost of tuition.  Do you ever consider my family, and responsibilities to take care of them while I am doing this. This stress is spilling into my family life. This is a real shame now.

I just had a very bad nose bleed from last class, its awful, I feel awful. You do not know what pollution and life is like working in China. I should not have to suffer from this.

Jeremiah Carber

Sent from Mail for Windows

From: Bill Gillespie
Sent: Tuesday, March 15, 2022 3:01 AM
To: Jeremiah Carber; Jeremiah Carber
Cc: Ann Yehle; Patricia Markos; Kara Ostlund
Subject: Re: E-mail response- please confirm Monday or Tuesday night 8:35pm

Hi Jeremiah,
Thank again for your e-mail response. I understand the frustration with your circumstances as your teaching assignments have changed several times during the UWL Educational Leadership Program and thus your school-based site supervisors have changed also. Therefore, following Wisconsin law, Dr. Vance cannot be your site supervisor if she is not school based.

The Improvement Plan was set up to give you an opportunity to improve academically and exit the program if the Practicum requirements were not met. Again, it would be appropriate for you to withdraw from the program now so that we can work with you on receiving a refund for this semester's tuition.

Creating a virtual time and date meeting where all parties involved can meet at a specific time and day, is difficult to coordinate. We will be available at the time and day presented in the last e-mail, Tuesday, March 15, 8:00 PM CST and 10:00 AM Wednesday, March 16 your time in China as you stated you are 14 hours ahead of us. A Zoom link will be sent to you and all the participants. Perhaps you can have someone cover your class for the last half hour so that you can plan to attend the meeting you've asked for. If you cannot attend, please let us know so that we can cancel the meeting for everyone involved. I am reiterating this last point since we had set up a meeting to discuss the Improvement Plan with you on February 15th and you did not attend or tell us that you were not going to attend.

Thank you for your consideration,
Bill, Ann, and Pat

Bill Gillespie, Ph.D.

*Program Director of Educational Leadership/Instructor*

*Institute for Professional Studies in Education*

*268 Morris Hall*

*1725 State Street*

*La Crosse, WI 54601*

*608-785-5410*

*https://www.uwlax.edu/profile/bgillespie/*

*"Grappling with America's history is one important way students learn to navigate difficult conversations and uncomfortable experiences like those they will inevitably face once they leave the classroom."*

*Ashley Burns and Manny Rivera*

**From:** Jeremiah Carber <carber911@yahoo.com>
**Sent:** Saturday, March 12, 2022 2:09 AM
**To:** Bill Gillespie <bgillespie@uwlax.edu>
**Cc:** Ann Yehle <ayehle@uwlax.edu>; Patricia Markos <pmarkos@uwlax.edu>; Kara Ostlund <kostlund@uwlax.edu>; Jeremiah Carber <carber8480@uwlax.edu>
**Subject:** Re: E-mail response- please confirm Monday or Tuesday night 8:35pm

Thank you Bill, for giving me more details & specifics to your concern of PI 34.023, subsections: a,b,c & d. After carefully reflecting on my current situation, I believe I can meet these requirements and if not all of these are met now, then hopefully we can figure out an acceptable solution so I can meet all these requirements promptly as time is of the essence.

I am busy with work from 5:30am until 10:30am. I have a break from teaching then. Please confirm if Tuesday 10:35 my time is OK  which is your time Monday or you can try Tuesday night 8:35pm? My schedule is attached here below:

# Welcome to Barstow Cixi!



🕐 **Barbara Za Franks <Barbara...**          2022:

收件人:   ⊗ Jeremiah Robert Carber；   🕐 Shiva Iy

 KL Standards for Onl... ⌄
444.1 KB

Training
2.1 MB

Zoom Instructions fo... ⌄
434.3 KB          ⌃

全部下载 · 预览全部

required to complete unit plans at this time. Howeve

 **shared spreadsheet** to complete your lesson plan

10. Your online class schedule for Cixi campus is as follo
curriculum guides and textbooks for the courses bel
shared ☐ Ningbo/Cixi Unit Plans to give you an idea
o your arrival at the campus.

1. 7:40-8:20          P1 – Biology (G11) – 📄 📄 C
**Textbook**

2. 8:30-9:10          P2 – Materials Science (G9 S
**Curriculum Guide** | ☐ 📄 **Textbook**

I would like to exhaust all options regarding my current principal functioning in the site supervisor role before considering withdrawing from the program. I have 3 sponsored site supervisors, and I do not understand how we can not resolve this. Barbara is currently in the midst of renewing her licensing. I do not really know the truth with what she said to me, but I will try to figure it out for you. In the mean time, I would like the paper that you want her to sign or Dr. Vance to sign with their personal information included. You say on p12,

"Sample: Form will be provided.

Keep a copy for your records. Provide a copy to your seminar leader and/or practicum supervisor. This form is listed on Canvas."

this, but I do not see it. Can you direct me on Canvas?

I am disappointed with these hiccups, but this is not the end of the world. Hopefully we can move appropriately. I will not be withdrawing from the program and expect to recover from this as I am an online student practicing in the education field abroad in China. Lets come up with a real inclusive support system for my situation so I can be successful with your teaching, guidance, & direction.

About the "plan of improvement", I have attached my responses. These responses are meant to elaborate on my experiences learning from your program which should resolve the concerns you may have as I give you feedback from myself, a learned student perspective.

Communication is important yet it doesn't seem very transparent, we need to have this meeting asap and we need to formulate the plan ASAP because I am busy with my family, work and this college program. Lets finish this out together and create a stronger communication line as this emailing. I really do not know what your going through, but I hope I can listen and hear positive solutions you can establish. I hope this is just a bump on the road and we can steer clear of any bumps. Can I recover from this? If the graduation is delayed, then what does that resolution of graduation look like? Could we switch Term 6 with Term 5, then do 5 in the Fall?

I have already begun working on my practicum goals, (supervising schedule, homework evaluation, PD Meeting/activities, Talent show, English speaking competition, Spelling Bee, Fire Drill, & Curriculum improvement plan) I started logging my times as I shadow the leaders this semester. Your welcome to view my progress anytime you request status. I already bought the books for next semester and found a great source that I almost paid $75 for but found for free online which I would be happy to share with my cohort. https://archive.org/details/practicingartofl0000gree_q3y2/page/n9/mode/2up?view=theater I have this March month, April, May, June to complete the practicum or an alternative approach if you designate. I am dedicated and putting forth the effort to improve.

Kindly,


Jeremy (Jeremiah) Carber
(267) 932-7000

*"Everybody is a genius. But if you judge a fish by its ability to climb a tree, it will live its whole life believing that it is stupid."*

*Albert Einstein*



On Saturday, March 12, 2022, 12:16:08 AM GMT+8, Bill Gillespie <bgillespie@uwlax.edu> wrote:

Hi Jeremiah,

Thank you for your e-mail inquiring about a meeting date to discuss your Plan of Improvement. As I said in my prior e-mail, we can meet with you in the evening our time (CST) which would be the following day AM your time. Therefore, we can meet with you this coming Tuesday, March 15th at 8:00 PM (CST) or Wednesday, March 16th at 8:00 PM(CST), 10:00 AM China time. Please respond ASAP to confirm the meeting.

Also, thank you for the explanation regarding your site supervisor situation for the practicum semester. As explained, a school-based supervisor with the correct licensure and experiences as outlined in WI law PI 34 is a requirement to participate in the Educational Leadership Program.

Here's the section of Wisconsin PI-34 relevant to site supervisors:

PI 34.023 Clinical program. The educator preparation program's conceptual frame work shall include a clinical program that meets all of the following requirements:

(4) COOPERATING TEACHERS AND SCHOOL-BASED SUPERVISORS. The clinical program may only use cooperating teachers and school-based supervisors who meet all of the following requirements:

(a) Holds a valid Wisconsin license, or an equivalent license if the clinical program is located outside of Wisconsin.

(b) Volunteered for an assignment as a cooperating teacher or school-based supervisor.

(c) Has at least 3 years of teaching experience, including one year of experience at the current place of employment, or at least 3 years of pupil services or administrator experience, including one year of experience at the current place of employment.

(d) Has completed training in the supervision of clinical students and the applicable standards under subch. II. History: CR 17-093: cr. Register July 2018 No. 751, eff. 8-1-18; EmR1909: emerg. am. (1) (b), eff. 1-14-19; CR 19-034: am. (1) (b) Register February 2020 No. 770, eff. 3-1-20.


In your case, the school-based supervisor must have a current administrative license from the United States in the area of licensure, principalship.

Since it appears you will not be able to have a Practicum Supervisor who would meet these requirements as outlined by the Educational Leadership Program and included in your Plan of Improvement, we are recommending that you withdraw from the program at this time. We will work with you to receive a tuition refund for this semester.


Sincerely,

Bill Gillespie, Instructor/ Advisor / Program Director Educational Leadership

Ann Yehle, Instructor Advisor Educational Leadership

Pat Markos, Director /Dean Institute for Professional Studies in Education


Bill Gillespie, Ph.D.

*Program Director of Educational Leadership/Instructor*

*Institute for Professional Studies in Education*

*268 Morris Hall*

*1725 State Street*

*La Crosse, WI 54601*

*608-785-5410*

*https://www.uwlax.edu/profile/bgillespie/*

"Grappling with America's history is one important way students learn to navigate difficult conversations and uncomfortable experiences like those they will inevitably face once they leave the classroom."

*Ashley Burns and Manny Rivera*

**EVIDENCE** C-3

**From:** Student Life Office (via Maxient)
**Sent:** Saturday, March 26, 2022 5:25 AM
**To:** Jeremiah Carber
**Subject:** Correspondence from the University of Wisconsin La Crosse School of Education

Dear Student,

THIS IS AN OFFICIAL CORRESPONDENCE FROM THE UNIVERSITY OF WISCONSIN LA CROSSE

We know here at UWL that we teach you to "don't click on the link." We ensure you this email is legitimate communication from UWL and that it is okay to click on the link in this email.

A letter has been issued to you electronically by the university. Upon clicking the link below, you will be taken to a screen requesting you log in with your campus username and password to securely access this correspondence. If you are receiving this notice in your capacity as a leader of a campus organization, you should contact our office immediately to request the appropriate access code for your organization.

Your letter will appear in PDF format and should be printed or saved for your records. If the letter fails to appear, you may need to use a different computer or install the free Adobe Acrobat Reader. If you continue to experience difficulty accessing your letter or wish to confirm the legitimacy of this message, please contact the Student Life Office at 608-785-8062.

Pick up your letter



March 25, 2022

Jeremiah Carber
Sent electronically to carber8480@uwlax.edu

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2021183301

Jeremiah Carber,

Please see the attached letter regarding communication from the University of Wisconsin La Crosse School of Education.

-University of Wisconsin La Crosse School of Education
Institute for Professional Studies in Education

CC: Patricia A. Markos, Ph.D., Academic Program Manager, Chair
    Bill Gillespie, Ph.D., Program Director of Educational Leadership

March 16, 2022

Re:    Letter of Intent to Dismiss


Dear Mr. Carber,


The Admin Team of the Institute for Professional Studies in Education (IPSE) (the "Team") intends to dismiss you from the MSED Educational Leadership program (the "Program") at the University of Wisconsin-La Crosse effective at the end of this academic semester, May 6, 2022.

On May 4 and December 21, 2021, meetings were held with yourself, William Gillespie, and Ann Yehle to discuss your progress in the Program. On January 24, 2022, you acknowledged receipt of an Improvement Plan sent from William Gillespie, Anne Yehle, me, and Consultant Kara Ostlund. You did not attend a virtual meeting scheduled for February 15, 2022, or acknowledge receipt of invitations to that meeting. You were informed of your lack of progress in the Improvement Plan on March 14, 2022, and invited to a meeting on March 15, 2022 to discuss that progress. You acknowledge the email but did not attend that meeting.

The reasons why the Committee intends to dismiss you are:

- Inability to get a qualified School-based Site Supervisor to supervise your work in practicum to begin June 20, 2022. The School-based Site Supervisor, must be able to supervise your principal practicum at your site in China and have a U.S. principal license with the proper years of experience, and a supervision course. Dr. Vance, who lives in Georgia, USA cannot be your School-based Site Supervisor.
- Unwillingness to attend meetings, 02/14/22 and 03/15/22 to discuss the Improvement Plan.
- Professional disposition as an educational leader.


If you wish to withdraw from the program now, Dean of Students, Dr. Kara Ostlund, kostlund@uwlax.edu, will work with you to see what, if any, reimbursement can be provided to you for the spring 2022 semester. If you wish to provide the Committee with further written information or argument with regard to why you should not be dismissed, such information should be provided to me in writing no later than Friday, April 1, 2022. If you do not respond to this letter by Friday, April 1, 2022, your dismissal from the Program will become effective. Once dismissed from the Program, you may complete

the courses in which you are currently enrolled, but you may not register for any other courses in or receive a degree from the Program.

Sincerely,

*Patricia A. Markos*

Patricia A. Markos, Ph.D.
Academic Program Manager and Chair
Institute for Professional Studies In Education
School of Education
University of Wisconsin-La Crosse
1725 State Street
La Crosse, WI 54601

March 31st, 2022



Jeremiah Carber

Sent electronically to

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2021183301

Dear UW Committee,

Please see the attached Letter regarding response to the communication from University of Wisconsin La Crosse School of Education.

CC: Patricia Markos, Bill Gillespie, Ann Yehle, Kara Ostlund, Amanda Abrahamson, & Team of the Institute for Professional Studies in Education (IPSE)

Dear Committee,

On March 26th, I received your Letter of Intent to Dismiss dated March 16th via carber8480@UWLAX.EDU email platform. The letter shares three bullets which serve as the basis for your decision of dismissal, which are listed below:

- Inability to get a qualified School-based Site Supervisor to supervise your work in practicum to begin June 20, 2022. The School-based Site Supervisor, must be able to supervise your principal practicum at your site in China and have a U.S. principal license with the proper years of experience, and a supervision course. Dr. Vance, who lives in Georgia, USA cannot be your School-based Site Supervisor.
- Unwillingness to attend meetings, 02/14/22 and 03/15/22 to discuss the Improvement Plan.
- Professional disposition as an educational leader.

This letter serves to provide information related to the bullets noted above, which I believe provides support of why I should be allowed to continue in the program.

## School Based Supervisor

The timing of this causes me to look back at other semesters regarding communications and wonder why this wasn't brought up earlier. Why all this got to this point? Why this all happened this way when it didn't have to be this way? The real hinge here is something about a site supervisor and UWL has known that I am in China since the beginning and it's suddenly now a challenge for you to accept Doctor Vance in the fourth semester when I should have been doing work towards the practicum goals.

Dr. Vance was approved from the start of this program as my site supervisor, and I was trying to find a creative solution since being informed of the Plan of improvement with these last-minute requirements that weren't there before term 4. Where they? If this would have been addressed since Term 1, or 2, we could have worked together to realize how to plan this well. Even during term 3, then I could have looked for a job in China that had exactly what you're looking for. I did take a job in China that I thought would be very suitable because it had two foreign administrative leaders with American MSED degrees along with; a Kindergarten, Elementary, Middle, and Secondary schools as well as a more advanced level of International curriculum with 3 different programs along with an American accreditation where these Chinese students receive a Barstow American High school diploma. I did more than enough to work with you and find the best school in China to do my practicum at, but you didn't even give Barbara Franks or myself much interest in making this work. I sent Ann the KL Group Employee conduct policy book and had zero feedback or reply.

As of now, I do not know much about practicum requirements other than what the UWL website says about EDU 773 which are posted publicly as follow:

> Further, during the practicum experience, learners will also have the opportunity to engage in professional discussions **with an experienced administrator/cooperating**

*principal and their practicum supervisor. In addition, the practicum affords learners experience engaging in authentic activities to include the opportunity to take risks under the mindful guidance of their cooperating principal and university supervisor. Finally, practicums lead to numerous networking opportunities that can translate into informal support systems post practicum. Prerequisite: admission into the Educational Leadership Program or consent of IPSE Director. Offered Fall, Spring, Summer (http://catalog.uwlax.edu/search/?P=EDU%20773)*

Under this perquisite, I should be allowed to use Barbara Franks of my current employer in China because she is a cooperating CAO (Chief Academic Officer) **who is an experienced principal** (does not teach any classes) & had achieved her MSED from America. In China, credentials, certifications, and licenses given from the government are not the same as in America. Also, American credentials such as licenses or certifications are not required to do the job of any administrator SLP. The government does issue teacher licenses, which can be used while promoting a teacher into administrator position. Under China laws and local education bureaus, a principal or experienced administrator does not have any licenses issued from the government as any current teacher can be promoted by the owner of that school with the title of Administrator, Principal or Headmaster. So why is Barbara Franks or any Chinese administrator or experienced principal not able to be a site supervisor so I can do the practicum work in China?

Additionally, and I say this with care and respect, your lack of communication about how to find a site supervisor about what is acceptable of site supervisor is substandard and has created this barrier for me which I have no way of understanding of how to proceed.

With Bill Gillespie, I get hung up on who is going to be the site supervisor and we don't seem to move past that so we can focus on the practicum goals and how to accomplish them successfully. I have made communication on March 6th as of who I choose to be the site supervisor and tried to start planning to conduct the practicum work, but nothing has moved forward as we are stuck on approval of a site supervisor. I have many great relationships with Chinese experienced administrators such as Nancy who was my last leader which you knew about, but you never mention to me to use her as my site supervisor. You do not tell me who to use, nor do you inquire more details about my chosen school with onsite supervisors. Please understand that I took a good job at a Chinese school that has two foreign administrative leaders with American MSED degrees who are qualified and hired by the school owners to lead the school as they oversee administering an American accredited program by the American Barstow school. If you do not know Barstow, then drive 45 minutes north of La Crosse Wisconsin to the town of Eu Claire and you will see how Barstow is a very American name as the main street of that town is named Barstow Rd. My American employer gives the Chinese students real American high school diplomas as the curriculum (with objectives, outcomes, and goals) are the same as in America. The school has partners that handle different tasks to create the best western education that can be created in China, so why is the Barstow school not an acceptable place to practice with two administrators with American MSED degrees who do not teach? I had sent Barbara Franks information as soon as she had completed the interview, I

conducted with her for the Finance project. You did not approve her even though I was being straightforward with her certification which she does not need to work in China as an experienced leader. She has worked for the company for over three years now and Sean has been with the same company for over six years now. According to all the practicum files you gave me and the weblink http://catalog.uwlax.edu/search/?P=EDU%20773 Both Sean & Barbara should be acceptable onsite school based supervisors unless you want me to get a Chinese experienced administrator to learn from. Barbara & Sean are experienced administrators, and they work on site at the school that I want to complete my practicum at because it has KG, Elementary, Middle, & Secondary school of which are all on the same campus. So far as we approach the midterm April 12th & 13th, everyone is very satisfied with my wife's teaching as well as mine so both of our professional dispositions are very well as we have had many positive interactions with my 9-12 grade students, leaders, human resources, and colleagues since our arrival February 11th. Our Child is doing very well at the kindergarten. We are invested in our community and our community is also invested in us, so I need to follow through with my graduation goals at UWL.

Bill Gillespie should have accepted Administrator Barbara Franks as my site supervisor because she legally has that title based on her education that she earned in America, which is not her native country. If America can allow foreigners to do their practicums, then why wouldn't an American University of Wisconsin equally honor me as a foreigner in China working successfully to complete my practicum? I have worked almost ten years in China, and I wanted to do a PD program for many years now, but I never found anything worthwhile that I thought was great until I read the MSED description on UWL website. I have learned so much about special education, (before this program, I have had very little experience with) because I have wonderful cohort members who lead in their department of special education. I have tried to discuss and learn many different faucets of education because America has more diversity than ever before which means we need to create the support for all students so they can share in an inclusive education that provides equality which will better their communities.


**Attendance at Meetings**

Short term notice was sent out for the Feb 9th, Feb 15th meetings were not notified appropriately with a reasonable notice. Looking back in my email inbox there is an email with a subject heading of *"Re: Canceled: Meeting with Jeremiah."* dated **February 14th**. The Feb 9th meeting was received in my inbox Feb 8th at 1:51am which would have been less than 24-hour notice. I was busy with packing, moving and take care of my family for the planned move to another city which occurred February 11th. I was not expecting this, nor was I available much after moving to a new place in China. I started this Term 4 in January wasn't expecting this as it wasn't in my syllabus.

There was never any meeting planned for 02/14/22 as your letter of intent to dismiss says, but February 14th was the date in my inbox about a future meeting of Feb 15th which I didn't get the message because I was so busy with moving that week. I did attend the zoom meeting for our cohort February 15th, and no mention was made during that hour of any future meetings to me.

While being 14 hours ahead in the future I sent an email replying to your March 15th message, where I had written *"I have asked my employer and I cannot change my current schedule, so maybe you can try to find another time that suits for you as well as me. You have my schedule."* At that point, it was up to you to suggest another time that would be compatible. March 15th was only my 3rd week working in person at my new school, and it's not good for me as a new employee to take off work without gaining relationship. Our school is very limited and stretched with problems we are addressing. I have gained trust now with my students and employer so now is ok to have a meeting with you while I give the students a worksheet to work on while I am in the class, but I need to be in the class as there is no one currently able to substitute my teaching.

## Professional Disposition

In the plan of improvement, you had said I had met that standard regarding my ability to teach using the teaching standards.  My honesty and zest for education makes me vital in helping my students with their needs.  The beliefs about my "unwillingness and professional disposition" are fallacies.

I have been sincere and direct with you, and I deserve to be treated fairly, equally, and with support so that I can complete this program satisfactory. I am very willing to have meetings as I have attended all nine previous meetings that were planned well in advance. My professional disposition is well as my ability to work in top level international schools while completing educational contracts are evident and provable with a track record. Please understand my frustrations when I am being asked to withdraw instead of supports given so I can follow tasks aligned with the program. All this extra stuff, that isn't in the syllabus sure seems like an attack on my character and it isn't very nice that I have to spend extra time and energy to protect myself as a student. I will not accept being dismissed for reasons unjust.

My grades reflect the effort I have invested in this program. You had said during the December 22nd meeting that I had made progress. You were not very specific in regard to what has progressed, or how to build on whatever as examples were not given. I felt that meeting was being overly critical and I had asked for specifics of what wasn't good or please explain further, and you could not think of anything at the time you could remember. The meeting ended with me promising to send my site supervisor information to you again (because you asked for it) which was Dr. Vance as I had not yet found a new employer or job. I might have told you that my current employer due to economic hardships could not continue to pay me the same salary as their enrollment was very low and as a result, I was forced to finish my contract and move on. You had not replied that Dr. Vance was unacceptable after I resent her information. In fact, you did not reply at all about this being a problem until I received the plan of improvement on February 16th date. That's when I saw the requirement being expressed.

I believe I have a place in the program, and you should think that I have a place too. Students apply and enroll in higher education to benefit from education and improve themselves, their family and community. I have invested a lot of the money I earned from my Chinese

community, family savings, as well as spent time learning these skills to handle the demands of being a strong school leader who puts others first before themselves. Money could be returned, but that won't give me back the time and energy I have invested so there is no changing my course and path that I have worked very hard to follow. I have learned valuable lessons, reflected on current educational trends, and created some wonderful projects which I do showcase to fellow Chinese educators.  What bothers me, is our communication is not good. I sent you (Bill) an email dated March 22nd about some of my thoughts on education 10 years ago and you didn't respond with agreement or feedback. Where it says, "Student Change." That was my personal education philosophy which is very similar to stuff we have been reading and writing about. Still, you didn't bother to reply and 4 days later I received the letter of intent to dismiss. Communication is not there and if you're so serious about dismissing me, then you should not be beating around the bush but be very direct because telling someone to withdraw, then that person says no, I want to stay, then you send a letter to dismiss them from the program is a very serious matter. Amanda said that by filing the complaint, that I would be able to get the help I needed, and I should not fear "retaliation from the teacher."

You can see my grades below.  I take my grades seriously, and I want to learn. If grading was done faster, then I could reflect on my learned lesson very well. I am currently teaching four subjects, while working full-time with five classes each day and over 2.5 hours of travel time back and forth. I need better communication, grading, and concern as I approach the best part of this MSED program.



Since Feb 16th, 2022, my education at UWL has been a troubling experience and this tarnish never should have happened. If the communication, understanding, and needed supports were in place for me to be successful, then this would never have happened. I was taken aback and

tried to explain myself in emails prior to this response letter being created. I do not think my words were not listened to very well and I hope you re-read this letter very carefully because I have the proof to back up any facts I have stated. I have tried to refrain from getting upset, but I'm hurt and could not sleep very well since I was given this letter of intent to dismiss. It's not a nice thing to receive. I think the plan of improvement letter was not nice to receive either as I had discussed this with my elder counsel, and they were dumbfounded, but I tried to remain calm so that my answers can extinguish these fallacies. We need to carefully figure out a way to professionally proceed in a gentle manner. I do not want any more negative statements. If any future education work needs improvement, then please provide examples, and discuss with me further so I can learn. I have had zero response since I sent the responses to the improvement plan which was sent March 12th.  There is no reply to that, so is it safe to assume you now understand my responses to that plan of improvement? If you really care about this plan of improvement, then I think you would have given some feedback or discussion that agrees or adds reasoning. Zero reasoning or response has been returned after I addressed this, so let's just move on and focus on going forward in a positive direction. I want to be bigger.

I request you do not dismiss me and instead help Bill Gillespie to communicate better with all his students. Maybe he is overloaded with work and needs an assistant such as Ann Yehle again to help him grade and coordinate student needs. Maybe he needs other resources, allowances, budget increases so he can provide better instruction. It's not my place to say what is happening on his side, but it seems like I might have been in the wrong place at the wrong time as he deals with whatever inadequacies or gaps. All over the world these days, teachers are being stretched, blamed, and overloaded with work because of limited budgets, constraints, and other reasons that we have no control over. I am not trying to blame anyone here, so please do not blame me for my busy life working and taking care of my family's future. I am not a problem, but I have no problem in stating solutions to solve whatever if we can see clearly. In China, you shouldn't state problems, but if you do not complain or say anything; then how are you ever supposed to make progress if there are no problems to solve? Problems usually become issues if they are not resolved. I have not created any issues because I am just looking for solutions. I am only one person and I cannot do much alone, so I need Bill Gillespie to agree on my path moving forward with doing the practicum. Please think of me as family. I want to join the ranks of Alumni of UW. I cannot think of a more prestigious institution in Wisconsin than UW. Please consider this letter and do not dismiss me from the program. I cannot afford to be dismissed.

Sincerely yours,

Jeremiah Carber,       3-31-22
UWL Grad Student,
MSED Program



April 18, 2022

Jeremiah Carber
Sent electronically to carber8480@uwlax.edu

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2021183301

Jeremiah Carber,

Please see the attached letter regarding communication from the University of Wisconsin La Crosse School of Education.

-University of Wisconsin La Crosse School of Education
Institute for Professional Studies in Education

CC: Patricia A. Markos, Ph.D., Academic Program Manager, Chair
    Bill Gillespie, Ph.D., Program Director of Educational Leadership

April 15, 2022

Dear Mr. Carber,

The Admin Team ("Team") for the Institute for Professional Studies in Education met today, 04/08/2022, to discuss your dismissal from the Educational Leadership/Director of Instruction program at UW-La Crosse.

After careful review of the Improvement Plan shared with you on 02/15/2022 and the subsequent Letter of Dismissal dated 03/25/2022, the "Team" unanimously agreed your dismissal was appropriate and will be effective on May 6, 2022.

Dismissal is based on the following, and review of your written responses that are insufficient.

- Inability to secure a qualified School-based Site Supervisor to supervise your practicum work to begin June 30, 2022. As previously shared with you, the School-based Site Supervisor, must be able to supervise you at your site in China and have a principal license from the U.S.A. with the proper years of experience, and a supervision course. Since Dr. Vance lives in the state of Georgia, U.S.A., she cannot be your School-based Site Supervisor. In addition, the laws that apply to School-based Site Supervisor are designated by Wisconsin PI-34. Barbara Franks, the Chief Academic Officer at your current position does not qualify as a School-based Site Supervisor because she does not have a Principal administrative license from the United States.
- Unwillingness to attend meetings, 02/14/2022 and 03/15/2022 to discuss the Improvement Plan.
  - o Did not try to reschedule with the "Team".
- Professional dispositions as an educational leader.
  - o Inability to work cooperatively in small groups.
  - o Approaches seen as judgmental by instructors.
  - o Refusal to redo assignments as written.
  - o Inappropriate comments related to individuals who are LGBTQ+.
  - o When given feedback, there is no personal accountability, tends to externalize and blame others.
  - o Being flip and using unprofessional language. If in a principal position, language is off-putting.
- Academic Progress from Improvement Plan
  - o Did not meet any of the expectations in the Plan of Improvement.
  - o Refusal to redo assignments to master Administrative Standards.
  - o In terms of equity and social justice, inability to complete paper adequately.

If you wish to withdraw from the program now, Dean of Students, Dr. Kara Ostlund, kostlund@uwlax.edu, will work with you to see what, if any, reimbursement can be provided to you for the Spring 2022 semester. Additionally, you do have the right to appeal this decision to Dean of the School of Education (SOE), Dr. Marcie Wycoff-Horn, mwycoff-horn@uwlax.edu.

Sincerely,

*Patricia A. Markos*

Patricia A. Markos, Ph.D.
Chair
Institute for Professional Studies in Education
1725 State Street
La Crosse, WI 54601
pmarkos@uwlax.edu



**UNIVERSITY OF WISCONSIN SYSTEM**

**Office of General Counsel**
**Matthew J. Lind** | 608-890-3281 | mlind@uwsa.edu
System Legal Counsel
1842 Van Hise Hall,
1220 Linden Drive
Madison, WI 53706
website: https://www.wisconsin.edu/general-counsel/

Quinn Williams
Noah Brisbin
Aaron Dumas
Wade Harrison
Kristin Johnson
Jennifer Sloan Lattis
Matthew J. Lind

<u>**Via Email**</u>

April 6, 2023



William C. Reil, Esquire
1420 Locust Street, Ste. 420,
Philadelphia, PA 19102
BillReilLaw@gmail.com

Dear Attorney Reil—

This letter is in response to your letter dated March 7, 2023, expressing Mr. Carber's interest in re-enrolling in the IPSE program this summer of 2023.

Unfortunately, UW-La Crosse's Institute for Professional Studies in Education (IPSE) will not be offering the relevant courses Mr. Carber seeks to complete this summer. As you may know, IPSE's programs are offered to a cohort. IPSE begins a new cohort whenever it has at least fourteen (14) qualified and interested applicants. Mr. Carber needs to complete the fifth term of his program. For that fifth term to be offered in the summer, a cohort needs to begin in the spring. Currently, there are no existing or planned cohorts for Mr. Carber's program that have begun or will begin in a spring semester.

When the fifth term has been offered in the summer, the shortest amount of time permitted for a student to complete the relevant coursework is eight (8) weeks. In those cases, generally, a student has already completed approved supervised hours as part of their internship. Mr. Carber has not yet completed any supervised practicum hours as no supervisor had been approved for him.

Also, the cohort model is built into the structure of all of the courses offered, including the courses Mr. Carber still needs to complete, i.e. EDU 744, Educational Research IV: Publication; EDU 773, Practicum and Seminar; and EDU 782, Inclusive Pedagogical Practices II. Therefore, altering these courses to offer them as an independent study would require IPSE to alter the essential elements of these courses. Additionally, IPSE has never offered these courses as an independent study.

The next time a cohort will be taking the fifth term of material that Mr. Carber seeks to complete will be in the fall semester of 2023. There are a number of prerequisites and other requirements that Mr. Carber would need to complete before he would begin that or another term.

(1) Mr. Carber would need to create an appropriate plan to satisfy all of the prerequisites specified in this letter with sufficient time for the relevant instructors to evaluate the work in advance of a readmission decision by the Dean Wycoff-Horn and other relevant institutional decision-makers. There would also have to be enough time between any positive admission decision and the beginning of the relevant academic period to identify and arrange an appropriate placement.

(2) The WI Department of Public Instruction requires that all candidates in an educator preparation program pass a criminal background check. Wis. Admin. Code § PI 34.018(2). To date, Mr. Carber has not done so. Therefore, Mr. Carber needs to fill out the paperwork for, submit to, and pass a U.S. criminal background check before he can be considered for additional coursework in the program. If he wishes to pursue the program, he must complete the criminal background check process through the School of Education Office of Field Experience.

(3) Mr. Carber would need to redo the work for his research project that he started in EDU 641, EDU 642, and EDU 743, as the previous research project he worked on in those other classes was premised on the assumption that he would complete his research on Chinese students learning English in China. Those classes are directly devoted to all of the necessary steps to preparing a research project. Therefore, if Mr. Carber were to complete his fifth semester in the U.S., he would need to redo the work prerequisite for EDU 744 on that basis.

(4) Similarly, Mr. Carber would need to the work he completed for EDU 772, Inclusive Pedagogical Practices I, that was based on the assumption that he would complete his practicum in China, so that he can be prepared to complete EDU 782, Inclusive Pedagogical Practices II, while completing his practicum in the U.S.

(5) Mr. Carber would need to make a plan to demonstrate that he can meet the goals of the Improvement Plan that led to his removal from the Program, and he would need to meet on a monthly basis with a faculty or staff member to ensure that he is making appropriate progress towards program completion.

Please let me know if you have any questions.

Sincerely,

Matt Lind
Senior System Legal Counsel

Attachment

cc: Dean Wycoff-Horn

EVIDENCE D-1

**From:** Instructure Support
**Sent:** Saturday, April 23, 2022 4:11 PM
**To:** Jeremiah Carber
**Subject:** Canvas Support Chat Transcript: Case # 08719987 ref:_00DA0lbsk._5003m1JdmCp:ref

Hello Jeremiah Carber,

Thanks for contacting Canvas Support! I've attached a transcript of our conversation below for reference. If you have any additional questions, please contact us again either by chat, phone, or by emailing us at support@instructure.com.

Chat Started: Saturday, April 23, 2022, 09:34:42 (+0200)

Chat Origin: Canvas Student Support Chat

Agent Daniel B

( 3s ) Daniel B: Hi Jeremiah! How can I help you today?
( 51s ) Jeremiah: Hello Daniel, I recently gained access to my prior Term 1,2 and 3 classes, but I am still missing access to class EDU 765
( 1m 5s ) Jeremiah: from term 1
( 1m 55s ) Daniel B: Let me check your profle
( 2m 38s ) Daniel B: Can you please tell me the exact name and code of the course you are missing?
( 3m 40s ) Jeremiah: EDU 765 Intro to Education
Leadership
( 5m 6s ) Daniel B: Thank you, checking.
( 5m 42s ) Jeremiah: sure, thanks
( 8m 25s ) Daniel B: I can see you have Completed this course. The reason why you don't see it in Canvas is that is was set to "restrict students from viewing course after term end date".
( 9m 23s ) Daniel B: Please reach out to your course instructor, hopefully he/she will be willing to grant access to students.
( 10m 22s ) Jeremiah: how could that happen?
( 11m 30s ) Daniel B: The instructor could have just changed the setting of a course with one simple click
( 11m 41s ) Jeremiah: oh, ok.
( 12m 1s ) Jeremiah: Also, how do i download the discussions and announcements?
( 15m 19s ) Daniel B: Unfortunately, this feature is not inbuilt in Canvas user interface at the moment. You may be able to download that using browser print function.
( 15m 42s ) Jeremiah: im not sure, I can try
( 16m 0s ) Jeremiah: where is the browser print button
( 17m 15s ) Daniel B: There should be an option inside the menu button.
( 17m 17s ) Daniel B: https://support.mozilla.org/en-US/kb/how-print-web-pages-firefox
( 18m 43s ) Jeremiah: ok, great I see the directions.
( 19m 13s ) Jeremiah: I wonder, how long will my canvas and email stay online if I get dismissed from the University?
( 22m 55s ) Daniel B: Unfortunately, I can't tell you exactly as it is something managed by the university

directly.
( 25m 20s ) Jeremiah: ok, i see
( 25m 57s ) Jeremiah: please email me a copy of this record. thank you
( 28m 3s ) Daniel B: Sure. You will get a transcript of our conversation on your email with a case being in Resolved status. If you have any additional questions, you may just reply to that email.
( 34m 34s ) Jeremiah: Thank you, have a good day.
( 34m 55s ) Daniel B: Thank you, you too! Do not hesitate to chat again in case you have any other questions. Take care!

Thanks!

Canvas Support

**From:** Jeremiah Carber
**Sent:** Thursday, May 5, 2022 11:04 AM
**To:** Bill Gillespie
**Cc:** Patricia Markos; Kara Ostlund
**Subject:** RE: I can not access edu 765



Hi Bill,

Thank you for being direct and honest about you "do not see any assignments from EDU -765 Class referred to in the Improvement Plan."

Actually, three times there were mentions of my work to EDU 765 class of Term 1, which I still do not have any access to. To be specific, the plan of improvement mentioned the Swampscott Principal twice, and the Alma D' Arte Charter Principal.(out of the 5 Principal letters that I analyzed)

According to the Plan of Improvement, I met 4 of the 11 principal standards. I saw 6 things legibly stating I didn't meet the principal standards, One was illegible(#7). Three of those six non-met standards came from this class which I still do not have access to as of now. So half of the standards supposedly not met according to the Plan of Improvement, do in fact stem from this first assignment completed from Term 1 of EDU 765 Class. Please remember, I did start the class about 7-10 days late in the first semester, yet I still completed this assignment by its deadline.(Feb 21st, 2021)

While still on the topic of the Plan of Improvement. I can't redo the interview where I interviewed one Chinese administrator, or redo the group project that I already did most of the work for that assignment. The last assignment about Multicultural Education, I did conform to the textbooks 163 different mentions about "Multicultural Education" and I did try to incorporate many of the 24 different definitions which state that "Multicultural Education is...." which aligned with what I had wrote in that Term 3 paper. I did add to this paper in the Response of the Improvement Letter. Likewise, I didn't have access to any prior terms (until about April 22nd) to go back into that assignment and retrieve feedback from you, but I still cooperated the best I could.

If the letter of intent to dismiss truly stems from this improvement plan which you apparently do not even know of the one assignment that had been completed in a hurry to satisfy the first class assignment of Edu-765 in Term 1 as it does account for 3 out of the 6 non-met standards; then I politely ask you to reconsider the steps you have taken with me.

Kind Regards,

Jeremy

Sent from Mail for Windows

**From:** Bill Gillespie
**Sent:** Thursday, May 5, 2022 6:16 AM
**To:** Ann Yehle; Jeremiah Carber

**Cc:** Bonnie Roscovius; Patricia Markos
**Subject:** Re: I can not access edu 765

Hi Jeremiah,
I do not see any assignments in EDU 765 that are referred to in the Improvement Plan.  Can you please be specific?
Thank you,
Bill

Get Outlook for Android

---

**From:** Ann Yehle <ayehle@uwlax.edu>
**Sent:** Wednesday, May 4, 2022 12:55:09 PM
**To:** Jeremiah Carber <carber8480@uwlax.edu>
**Cc:** Bill Gillespie <bgillespie@uwlax.edu>; Bonnie Roscovius <broscovius@uwlax.edu>; Patricia Markos <pmarkos@uwlax.edu>
**Subject:** Re: I can not access edu 765

Jeremiah, Please advise what you are seeking from EDU 765 and I will see it is downloaded and sent your way.  Thank you.  Ann

---

**From:** Jeremiah Carber <carber8480@uwlax.edu>
**Sent:** Tuesday, May 3, 2022 4:51 PM
**To:** Ann Yehle <ayehle@uwlax.edu>
**Subject:** I can not access edu 765

Dear Ann,

Can you please check the box so I can have access to Term 1- Edu 765 Intro to Principalship?

I'm not sure why I am given an improvement plan which I can not even go back into my prior courses online to try and redo them. Do you have the ability to check the box so I can access that class or does Bill have the authorization to do that?

Kind Regards,

Jeremy Carber

Sent from Mail for Windows

## Grades for Jeremiah Carber

**Course**
Introduction to Educational [v]

**Arrange By**
Due Date [v]

Apply

**EVIDENCE** D-3

| NAME | DUE | STATUS | SCORE | OUT OF | |
|------|-----|--------|-------|--------|--|
| FlipGrid Intro | Feb 7 by 11:59pm | | 10 | 10 | 🗓 |
| Feb. 9 Combined Course Zoom | Feb 9 by 5pm | | 10 | 10 | 🗓 |
| Module 1 Deliverable 5 - The Principal as Both Technician and Artist Reflection | Feb 21 by 11:30pm | | 9 | 10 | 🖉🗓📧📄 (https://uwlac.instructure.com/courses/379464/assignments/3169820/submissions/440574/originality_report/attachment_303060917attempt=1) |
| March 9 Combined Course ZOOM/Chat | Mar 9 by 5pm | | 10 | 10 | 🗓 |
| Module 2: Deliverable 3 The Principal's Role in Teaching & Learning: An Elevator Speech | Mar 14 by 11:30pm | | 9 | 10 | 🖉🗓 📄 (https://uwlac.instructure.com/courses/379464/assignments/3171247/submissions/440574/originality_report/attachment_314158377attempt=1) |
| Module 3 Discussion: Initial Post | Mar 21 by 11:30pm | | 10 | 10 | 🗓 |
| Module 3 Discussion: Follow Up Posts | Mar 28 by 11:30pm | | 10 | 10 | 🗓 |
| Module 3 Deliverable 3: The Role of the Educational Leader & the Connection to Flow | Apr 4 by 11:59pm | LATE | 9 | 10 | 🖉🗓📧📄 (https://uwlac.instructure.com/courses/379464/assignments/3172238/submissions/440574/originality_report/attachment_329617597attempt=2) |
| April 13 Combined Course ZOOM/Chat | Apr 13 by 5pm | | 10 | 10 | 🗓 |
| Deliverable 3: Lovers of Change Press Release | Apr 25 by 11:30pm | | 10 | 10 | 🖉🗓 📄 (https://uwlac.instructure.com/courses/379464/assignments/3179958/submissions/440574/originality_report/attachment_332183157attempt=1) |
| Deliverable 2: The Art of Noticing: Shadowing an Educational Leader | May 2 by 11:30pm | | 10 | 10 | 🖉🗓 📄 (https://uwlac.instructure.com/courses/379464/assignments/3180068/submissions/440574/originality_report/attachment_336606847attempt=1) |
| Final Combined Course Project (EDU 765/766) | May 7 by 11:30pm | | 9.5 | 10 | 🖉🗓 📄 (https://uwlac.instructure.com/courses/379464/assignments/3180036/submissions/440574/originality_report/attachment_340404207attempt=1) |

5/17/2021, 9:40 /

| NAME | DUE | STATUS | SCORE | OUT OF |
|------|-----|--------|-------|--------|
| **ASSIGNMENTS** | | | 97.08% | 116.50 / 120.00 |
| TOTAL | | | 97.08% | 116.50 / 120.00 |

EVIDENCE

 E-1

**William C. Reil, Esquire**
**1420 Locust Street, Suite 420, Philadelphia, PA 19102**
**Tel: 215-564-1635 Fax: 215-564-4292**
**BillReilLaw@gmail.com**

August 2, 2022                                **BY EMAIL ONLY**
                                             mwyoff-horn@uwlax.edu

Marcie Wycoff-Horn, PhD
Dean, School of Education
University of Wisconsin
235 Morris Hall
1725 State Street
LaCrosse, WI  54650

               Re:  Jeremiah Carber v. University of Wisconsin
                    **Appeal**

Dear Dean Wycoff-Horn:

Please be advised that I represent Jeremiah Carber, a graduate student at the
University of Wisconsin.  I sent a letter of representation to the University, which was
directed to their counsel, Matthew Lind, Esquire.  Mr. Lind and I also have spoken
concerning Mr. Carber.  I reviewed your email of August 1, 2022.  I spoke to Mr.
Carber today and he authorized me to file this appeal of his dismissal and the ancillary
issues.

"I, Jeremiah Carber, appeal the grade given to me arising out of the failure to confirm
my choice for a principal mentor for my principalship practicum. I am also appealing
any grades directly or indirectly (EDU 771 and EDU 772, Spring 2022) referenced in
my dismissal letter of April 15, 2022 by Dr. Markos.  I am living and teaching in
China and it has been difficult to obtain a mentor.  I suggested a mentor to the
University who would fill the criteria involved.  I would suggest that there be some
flexibility here. The person that I suggest is Dr. Vance, who is well-qualified to
supervise me. I have previously corresponded concerning her qualifications.

My dismissal letter of April 15, 2022 is deficient for the following reasons:

(1) I had secured a qualified site supervisor.  Dr. Vance mentored me on 4 previous
terms and there was no difficulty with the University previously.   I relied on the
acceptance of Dr. Vance by the University, and their reversal of position was
unreasonable and lacked fair notice.

(2) With regard to unwillingness to attend meetings, I did not get the letter concerning
the meeting of 2/14/22 until a day after the meeting.  The issue here was lack of notice,
not any unwillingness on my part.

(3) With respect to "professional dispositions as an educational leader," and "inability
to work cooperatively in small groups," these allegations are ambiguous, and they

lack any substantive evidence.  The same is also true where my dismissal letter alleges that there were "approaches seen as judgmental by instructors."  My understanding is that I do not abrogate my right of free speech or freedom of religion at a state institution, simply because I may have an opinion that is different from some instructors.  This is also true regarding  the inappropriate comments which I allegedly made regarding certain LGBTQ+ issues. The comments are nowhere detailed.  Finally, "being flip and using unprofessional language," is conclusory and void for vagueness. I believe that my due process rights were trammeled upon in the letter of  April 15, 2022.

I note the following, *inter alia*, to exhaust my legal remedies:

- I did not receive rudimentary due process in this instance.
- The University violated my common law due process rights.
- I did not receive appropriate opportunity  to confront the allegations, and those making them, against me.
- There was substantial compliance by myself with school policies and procedures.
- I was never given any warning or probation, nor was there any progressive implementation of sanctions.
- The grade and/or dismissal was against the weight of evidence and the law.
- I have been denied the requisite notice and opportunity to be heard incumbent upon a state actor.
- The University violated my contractual rights.
- The University would be subject to doctrine of *quantum meruit,* if I am not allowed to finish my degree."


Sincerely yours,

William C. Reil

William C. Reil, Esquire
WCR/mar

cc:  Matthew Lind, Esquire
       Jeremiah Carber

## Fwd: Appeal of Dismissal from Educational Leadership/Director of Instruction Program

From: Bill Reil (billreillaw@gmail.com)

To:   carber911@yahoo.com

Date: Friday, October 14, 2022 at 10:03 PM GMT+8



Sincerely,
William C. Reil, Esquire
1420 Locust Street, Suite 420
Philadelphia, PA 19102
215-564-1635
http://BillReil.com
BillReilLaw@gmail.com

---------- Forwarded message ---------
From: **Bill Reil** <billreillaw@gmail.com>
Date: Wed, Oct 12, 2022 at 2:19 PM
Subject: Fwd: Appeal of Dismissal from Educational Leadership/Director of Instruction Program
To: <carber911@yahoo.com>

Sincerely,
William C. Reil, Esquire
1420 Locust Street, Suite 420
Philadelphia, PA 19102
215-564-1635
http://BillReil.com
BillReilLaw@gmail.com

---------- Forwarded message ---------
From: **Marcie Wycoff-Horn** <mwycoff-horn@uwlax.edu>
Date: Tue, Oct 11, 2022 at 7:00 PM
Subject: Re: Appeal of Dismissal from Educational Leadership/Director of Instruction Program
To: Jeremiah Carber <carber911@yahoo.com>, billreillaw@gmail.com <billreillaw@gmail.com>
Cc: Matt Lind <mlind@uwsa.edu>, Patricia Markos <pmarkos@uwlax.edu>

October 11, 2022

Jeremiah Carber via his Attorney
William C. Reil, Esquire
1420 Locust Street, Suite 420
Philadelphia, PA 19102

Re: Appeal of Dismissal from Educational Leadership/Director of Instruction Program

Mr. Carber:

The Wisconsin Department of Public Instruction (DPI) has specific requirements around practicum experiences, with criteria for site-based supervisors and university supervisors according to Wis. Admin. Code

§ PI 34.023(4). Additionally, the University must approve the practicum site as one that aligns with the program expectations and outcomes. The site-based supervisor must be licensed in the United States and in the jurisdiction where your practicum experience will take place, they must oversee your practicum experience in-person, be familiar with the program and content standards, provide two written evaluations of performance using the evaluation tool provided by the program, and participate in two triad meetings (site-based supervisor, program supervisor and student). If you can identify a practicum school site and site-based supervisor that are reviewed and approved by UWL prior to beginning any practicum experience, *or* if you are willing to complete your practicum experience at a placement in Wisconsin that is arranged by the University at an approved school site, with a qualified site-based supervisor, I will reconsider your appeal and permit you to complete your UWL program. However, the practicum experience that you have identified does not follow what is outlined above and does not comply with the requirements of Wis. Admin. Code § PI 34.023(4). Therefore, until such time that a qualifying practicum experience is brought forward and approved, I must deny your appeal of dismissal from your program.

Sincerely,

*Marcie Wycoff-Horn*

Marcie Wycoff-Horn, Ph.D.
Dean, School of Education



**Marcie Wycoff-Horn, PhD**
Dean, School of Education
mwycoff-horn@uwlax.edu | 608.785.8134 | www.uwlax.edu/soe
235 Morris Hall | 1725 State Street, La Crosse, WI 54650
Pronouns: She/Her
*Please direct scheduling requests to jkirkpatrick@uwlax.edu*



# Action Research Timeline – Cohort 7

**EVIDENCE E-3**

| Research I – Summer Session<br>July 19 – August 13, 2021 | Research II – Fall 2021<br>Sept. 7 – Dec. 15, 2021<br>Oct. 25, 2021 - midsemester | Research III – Spring 2022<br>Jan. 24 – May 6, 2022<br>March 11, 2022 - midsemester | Research IV – Summer Session |
|---|---|---|---|
| • Decide on topic to be researched (based upon your passion and circumstances) | • Submit lit review in APA format at start of semester sections for edits/suggestions. You will send these back by midsemester for further review. | • Revisit Introduction, Participants and Procedure section - Action plan (based upon your data analysis and what the implications of your research are for the | • At the start of the semester, submit your Discussion section. |
| • Find at least 20 scholarly journal articles and books on your topic and begin organizing the information into themes – newspaper articles are not scholarly. Put these in APA format to submit by the end of the session. | This is an ongoing process.<br>• Complete the IRB submission (see Helpful Handout and exemplar example on Canvas. There are also examples of consent/assent forms.) This also includes copies of your data tools. Send this to Bill and Bonnie for review. Once reviewed, we will tell you to submit to IRB committee. *You cannot | future (including what this means for the profession and/or your individual district/school) for edits/suggestions.<br>• Write the Abstract for your Action Research | • Write the Abstract for your Action Research<br>• SUBMIT FOR FINAL EDITS & SUGGESTIONS |
| • Human Subjects CTI tutorial and certificate submitted | gather any data until you have received IRB approval. | • Work on results section – use APA checklist as guidance – you will want tables, graphs, etc. in this section. Submit at end of semester. | |
| During the rest of the summer, you will need to write your review of literature (see examples on Canvas). Please follow the APA Checklist for requirements. | • Collect your assent/consent forms (to be kept for 5 years) and begin your data collection – the data collection may continue into Research III. | • To get ahead, work on the Discussion and Conclusion & Implications sections of your project (See APA checklist). This includes your Action Plan and Abstract. Otherwise, you will be pressed for time to complete in the shorter summer session. | The entire project paper must be finished with edits/suggestions to be considered done. |
| You may also want to determine your data tools to answer your research questions. These will be part of the IRB submission. | • Complete Introduction, Participants, and Procedure sections (use APA checklist as guidance) – due at end of semester | You may submit these at the end of the semester if you are ready for edits and suggestions. | |

Transcribed copy of October 17ᵗʰ 2023 Mee                    )5-24-2028



On October 17ᵗʰ, 2023, Mr. Lind representing UWLAX said discriminating remarks to Jeremiah Carber who was not protected in what should have been a protected activity of attending school in an online educational program at UWLAX.

Here are some important notes of the conversation shared between UWLAX representative Mr. Lind said to Jeremiah Carber as he explicitly discriminates with his words.

"It's highly unlikely you will be able to finish this program any time soon."

"Theres a lot more than that you will need to provide."

"I am perfectly aware that you only have three courses to finish."

"There's no agreement to be had."

"you have been kicked out of the program."

**"you should be someone who could be allowed to complete this program"**

The October 17ᵗʰ 2023 tape is transcribed below. Jeremiah Carber words are highlighted in yellow as most of the conversation was made by UWLAX Mr. Lind whose words are just wrote plainly.

*********************************************************************************

October 17ᵗʰ 2023

I made a copy of our discussion and this is it below:

Are you referring to  the Colorado background check which I already submitted?

This is not a productive conversation at this point.

Let me just move on from that If you do not feel comfortable talking about that. Umm.. If I go where doctor Vance is and work in her school umm, do you have a time frame of how I would be able to finish this because I I've already put about 75 hours along the

Transcribed copy of October 17th 2023 Meeting.                 OCR Complaint 05-24-2028

last four terms into assignments which I was told that I would be able to use as credit for my practicum such as the assignment like where I attended the waking up

OK hold on, slow down, slow down, your once again, your asserting inserting a lot of things that I believe to be false, and I believe I have record to demonstrate that there false.

I hope not Sir.

I already told you at the beginning of this conversation I want you to listen, please carefully and if you can't listen to me, I'm gonna hang up.  Doctor Vance is not eligible based on the information we currently have regarding Doctor Vance qualifications to serve as a sight supervisor, and I have documentation that you were already told this. Therefore, I cannot make any representations as to proving to be able to work with doctor Vance as a site supervisor which means which means that I can not give you a timeline. If you have information that Doctor Vance is in fact eligible to serve in as a sight supervisor, then share that with me.

I will be following up in writing with a letter responding to the questions that you have raised. There are other issues that I need to address as well in the letter so I haven't finished it yet, just so that you can understand what's going on, **but I wanna be clear at this point based on what you have proposed, its highly unlikely that you will be able to finish this program anytime soon.** But once again feel free in writing to share with me the information that you have about your proposal.

OK I will follow up on what you just stated and I will prove to you that she has renewed her credentials and would be an eligible candidate.   Moving along, if I was to work at a closer school, umm, what information would you like? A letter of recommendation as well as the credentials?

Transcribed copy of October 17th 2023 Meeting.          OCR Complaint 05-24-2028

**Theres a lot more than that you will need to provide**. So I think it be best since I think there's gonna be a long list of things that we need from you before we let you back into the program from what you have been actually dismissed. Umm, I think it's best for me to provide that to you in writing, so Im going to conlcude my letter and get that out to you shortly that will list a number of issues that need to be resolved before anyone would consider letting you back into the program of UW La Crosse.

Do you realize that there was only three classes to finish for term 5?

So Mr. Carber, I am not feeling like you are listening to me and I'm going to hang up!

Well I'm just, I'm just saying that a number of issues... that sounds like a lot and I'm just, I'm not aware that that there's

Ok than its probally best for me to put that in writing, so you can respond in writing, so you can understand  the things I have said and think about them carefully before you respond. Umm, **I am perfectly aware that you only have three courses to finish.**

OK- good, thank you for answering that. I would like to, I will be finishing up my child clearance and my other government paperwork in order to start working as a substitute teacher if not a full time teacher position in the states. So I'm not quite sure why you think what I think you're alluding to but that's fair considering what your client may have told you but please realize that I'm doing the best I can despite the disability that I've had.

Umm I really have no idea to what your referring to right now. I wanna be clear, you have not completed UWLAX criminal background check process. Based on this

conversation today I understand that you're telling me that you have a marijuana charge on your record. What other charges may be possibly be on your record.

No Sir I'm not I'm not saying that, I'm just asking that question.

OK I said possibly, so listen to what I say, Umm, I'm not saying there is any specific issue other than the process needs to be completed, you have not done so. Is that clear?

You have an e-mail that you can send and I will try to cooperate if we can come to an agreement about the finishing.

**There's no agreement to be had**. You have been removed from the program, if you want to.. You have been dismissed from the program, **you have been kicked out of the program**. If you want to return to the program, you must do all of the things that UW La Crosse is asking you to do. That is not a situation where we are negotiating, this is a situation where UW La Crosse dictates the things that need to be done and you either do them and get into the program or you don't and by the way I shouldn't say that if you do all these things you will get the program; you need to do these things and provide a satisfactory understanding from UW La Crosse that you actually would be a good candidate to receive the degree that they are offering. That's the situation. **I will share with you something in writing shortly, uhh and then we will go from there. At this time, you have been removed from the program and you will need to demonstrate to UW La Crosse satisfaction that you should be someone who could be allowed to complete this program.** All, I think I have explained what I need to explain for now, I will provide something in writing, we'll talk soon, thank you much.

Thank you for taking my call, goodbye Mr. Lind..... Take care

### University of Wisconsin - La Crosse
### University Complaint
*Submitted on March 15, 2022 at 12:18:50 am CDT*

| | |
|---|---|
| Nature | **Academic** |
| Urgency | **n/a** |
| Incident Date and Time | **2022-02-16 10:00 AM** |
| Incident Location | **Online** |



Reported by
| | |
|---|---|
| Name: | **jeremiah robert carber** |
| Title: | **Masters student** |
| Email: | **carber911@yahoo.com** |
| Phone | **2679327000** |
| Address: | |
| | **[UNAUTHENTICATED]** |

Involved Parties

**Bill Gillispie ()**
Faculty                                              bgillespie@uwlax.edu

**Ann Yehle ()**
Faculty                                              ayehle@uwlax.edu

**Pat Markos ()**
Faculty                                              pmarkos@uwlax.edu

**Jeremiah Robert Carber ()**                       carber911@yahoo.com
Student

Questions

What informal resolutions have you attempted prior to completing this form?
**I have tried to discuss an "improvement plan" dated Feb 16th 2022, that questions my site supervisor on record and I have tried to set up a meeting where I am available to discuss this yet none of these three faculty members and make time to communicate professionally and find an inclusive way for me to meet practicum class expectations in an equitable way. I am being given very little support in this program, while being blamed for prior assignments and given unrealistic demands such as I should withdraw from the program.**

Describe the nature of your complaint. (Be factual. Include names, dates, and other specific information. Describe any actions you have taken to resolve the issue.
**I was given 2 or 3 dates to meet with them with less than 24 hour notice and I was busy with new circumstances of the load of working in China, so I couldn't confirm these dates. Then on Feb 16th, I found in my email an "improvement plan." I promptly replied to the "improvement plan" and tried to break it all down and understand what was happening. I addressed one of the seven improvement plans and have not heard any response back because it turns out that some of my group members did not contribute to a few assignments, therefore they plagiarized my work when they received credit for doing nothing. I have still heard nothing of that matter, nor has any apology been given to me.**

**I tried to resolve this with the help of the new leaders in my school where I work in China but my professors are not cooperating , nor rendering aid to resolve this matter. On March 12th and today again March 15th I was told that I should withdraw from the program and that is something that is now causing me severe hardship as I have invested a lot of time, energy and money into this program. This wrong must be undone, or your school could be found in violation of Wisconsin Statute PI 34.023 Section 3, subsection (a) because I have had zero communication with Ann, Pat about the practicum work being completed. Bill has given me the same written papers as all the other cohort members, but I am in China and need to have the ability to work well within my scope and sequence to achieve practicum results that display knowledge and learned**

skill-sets of the 11 principal standards. The problem is when I try to talk to Bill about setting up meetings with my site supervisor or stuff along these lines, I am not getting cooperation. Time is of the essence, and if this is not resolved soon, then this hardship as this will affect my future career, family and other things will be addressed in forms in an official grievance mechanism.

Attachments
march122022werecommendtowithdrawletter.pdf
march13thtryingtoresolvesitesupervisor.pdf

*Pending IR #00005587*
*Submitted from 94.177.118.112 and routed to Charissa Jakusz (Assistant Dean of Students). Processed by routing rule #74.*
*Copies to: vfigueroa@uwlax.edu; kostlund@uwlax.edu*

**EVIDENCE**

E-6

# District of Columbia

### Office of the State Superintendent of Education

This is to certify that

## BARBARA FRANKS-CONLIFFE

Having met the regulations as required by the District of Columbia, is qualified to teach and/or provide services in the subject(s) as indicated below:

### ADMINISTRATIVE SERVICES CREDENTIAL / PREK-12 GRADE LEVEL

### STANDARD - ADMINISTRATOR



**OSSE**

Effective Date

**7/1/2016**

Expiration Date

**6/30/2020**

Amy Maisterra
Assistant Superintendent
Elementary, Secondary, and Specialized Education

It is the responsibility of the holder of this document to maintain current certification and to know the requirements needed to renew or upgrade this credential prior to its expiration date.

CREDENTIAL HOLDER COPY