## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**JEREMIAH CARBER**,

        *Plaintiff,*

    v.

**UNIVERSITY OF WISCONSIN-LA CROSSE**,

        *Defendant.*

**Case No. 2:24-cv-01898-JDW**

### MEMORANDUM

Courts must be wary of second-guessing the academic decisions of educators; when we do review those decisions, our scope is narrow. *See Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 226–27 (1985). Jeremiah Carber challenges his dismissal from the University of Wisconsin-La Crosse's online Master's program. He brings discrimination, retaliation, First Amendment, due process, and breach of contract claims against the University, but he has not pled facts to support those claims. I will therefore dismiss the Amended Complaint. For some claims, I will dismiss with prejudice, meaning that Mr. Carber cannot renew them. For others, I will dismiss without prejudice and give Mr. Carber one additional chance to plead additional facts, if he can do so in good faith.

## I.    BACKGROUND

While living in China, Mr. Carber enrolled in the University of Wisconsin-La Crosse's online Master of Science in Education program in February 2021. That clinical program

required each student to have an on-site Practicum Supervisor with a current license from the United States in the area of principalship. (ECF No. 15 at p. 55 (Ex. C-2).) Program Director Bill Gillespie knew that Mr. Carber lived in China and approved Merri Vance Allen-Wallace[1] to be Mr. Carber's supervisor. (*Id.* at pp. 2–3, 26 –27 (Ex. A-1).)

Mr. Carber completed three terms of the Program, receiving a 4.0 GPA. During his third term, Mr. Carber "was forced to do an assignment that was discriminative in nature as he had to create a video where he needed to give his own experience and testimony about 'White Privilege.'" (*Id.* at p. 4.) He states that he "felt like the assignment was targeted at himself as he has Caucasian skin." (*Id.*) Mr. Carber was also "pushed to talk about discriminating conversations of White Privilege and given 'Got Privilege @Instagram' accounts," and "told to attend the event, 'Waking up White,' to understand Social Justice," which "made Carber on edge and felt like he was being discriminated against because he had Caucasian skin." (*Id.*)

During his fourth term, on February 11, 2022, Mr. Carber moved from Wuhan to Nangshan to start a new job. Because Dr. Vance was in Wuhan, she could no longer serve as his on-site supervisor. On February 14, 2022, the University sent Mr. Carber a Student Plan of Improvement ("SPI"). The SPI addressed Mr. Carber's lack of compliance with program standards, concluding that he must (i) find a qualified site supervisor in his new location; (ii) "submit deliverables that align to the requirements as described in the course

---

[1] Mr. Carber refers to Merri Vance Allen-Wallace as "Dr. Vance," so I will do the same.

materials;" (iii) "use professional language in all course deliverables;" and (iv) "meet the requirements of the WI Administrative Standards." (*Id.* at p. 46 (Ex. C-1).) The SPI required Mr. Carber to identify a new site supervisor by April 5, 2022, and stated that a meeting would be held on April 12, 2022 "to determine the outcome of the plan." (*Id.*) Mr. Carber failed to attend meetings to discuss the SPI, later explaining that he had been given less than 24 hours' notice. (*Id.* at p. 64 (Ex. C-5).)

Mr. Carber was unable to find a new site supervisor. On March 16, 2022, the University sent Mr. Carber a letter of intent to dismiss him from the program. The reasons stated for his dismissal were "[i]nability to get a qualified School-based Site Supervisor," "[u]nwillingness to attend meetings ... to discuss the Improvement Plan," and "[p]rofessional disposition as an educational leader." (*Id.* at p. 59 (Ex. C-4).) The letter informed Mr. Carber that if he "wish[ed] to provide the Committee with further written information or argument with regard to why [he] should not be dismissed, such information should be provided ... in writing no later than Friday, April 1, 2022," otherwise his dismissal would become effective. (*Id.*)

Mr. Carber responded to the letter on March 31, 2022. The University stood by its decision to dismiss him. On April 15, 2022, it sent him a letter indicating that his dismissal would be effective May 6, 2022, the end of his fourth term. (*Id.* at p. 69 (Ex. C-6).) In addition to the reasons stated in its previous letter of intent to dismiss, the University identified Mr. Carber's failure to "meet any of the expectations in the Plan of

Improvement," "[r]efusal to redo assignments," and "inability to complete [equity and social justice] paper adequately" as reasons for his dismissal. (*Id.*) That letter also informed Mr. Carber that he had the right to appeal his dismissal to the Dean of the School of Education, Dr. Marcie Wycoff-Horn. (*Id.* at p. 70.)

Mr. Carber hired an attorney to represent him and mediate his dispute with the University. This was ultimately unsuccessful, in part Mr. Carber alleges because the University "continued to retaliate against [him] ... demanding that Carber retake classes that were already paid for, completed and graded." (*Id.* at p. 15.) The University, through counsel, outlined the steps that Mr. Carber would need to take to be readmitted to the program, including retaking certain classes. (*Id.* at pp. 71–72.) The Parties were unable to reach an agreement.

Mr. Carber filed his *pro se* Complaint on May 3, 2024. The University moved to dismiss, and Mr. Carber filed an Amended Complaint, so I denied the University's motion as moot. The Amended Complaint alleges discrimination, retaliation, First Amendment retaliation, due process violations, and breach of contract.[2] The University moved to dismiss the Amended Complaint on August 29, 2024. The Motion is ripe for review.

---

[2] In response to the University's Motion, Mr. Carber alleges new facts to bolster his claims. However, it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," so I have not considered those facts. *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

## II.    LEGAL STANDARD

A district court may dismiss a complaint where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When deciding a motion to dismiss, courts consider "the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quotations omitted). "[A] court must 'accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (citation omitted). To survive, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Judges interpret complaints from *pro se* litigants liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (pro se filings are construed liberally).

## III.    ANALYSIS

### A.    Title VI Discrimination

Mr. Carber alleges that he "felt like he was being discriminated against because he had Caucasian skin" but does not state the statutory basis for his claim. (ECF No. 15 at p. 4.) Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or

be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. A plaintiff can prove a violation by direct or circumstantial evidence. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014).[3]

Direct evidence is "evidence sufficient to allow the jury to find that the decision makers placed substantial negative reliance on [the individual's race] in reaching their decision." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338 (3d Cir. 2002) (quotations omitted). In an educational setting, circumstantial evidence requires a plaintiff to prove that (i) he is a member of a protected class; (ii) he suffered an adverse action at the hands of the defendant in pursuit of his education; (iii) he was qualified to continue the pursuit of his education; and (iv) he was treated differently from similarly situated students who are not members of the protected class. *See Katchur v. Thomas Jefferson Univ.*, 354 F. Supp. 3d 655, 666 (E.D. Pa. 2019).[4] Though the plaintiff need not meet the prima facie standard to survive dismissal, the complaint must contain "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

---

[3] In the Motion To Dismiss, the University suggests the Amended Complaint alleges discrimination under Title VI and Title IX, and Mr. Carber doesn't disagree. Title IX, though, addresses sex discrimination, so it does not apply.

[4] The Third Circuit has not adopted these elements in a precedential opinion, but panels of the Third Circuit have done so in several nonprecedential opinions, and I find those, as well as Judge Baylson's analysis in *Katchur*, persuasive. *See, e.g., L.L. v. Evesham Twp. Bd. of Ed.*, 710 Fed. App'x 545, 548-49 (3d Cir. 2017); *Utah v. Strayer Univ.*, 667 Fed. App'x 370, 371-72 (3d Cir. 2016).

Taking Mr. Carber's factual allegations as true and viewing them in a light most favorable to him, I find that he is a member of a protected class and that his dismissal was an adverse action. However, Mr. Carber was not qualified to continue his education. By his own admission, Mr. Carber was unable to find a new site supervisor after he moved cities. This was one of the reasons the University gave for his dismissal, and I have no basis to question the University's determination that having a site supervisor defined eligibility to continue in the program.

Mr. Carber also fails to allege that, by dismissing him, the University treated him differently from similarly situated, non-White students. For instance, he does not allege that the University relaxed the on-site supervisor requirement for non-White students or that the University had different requirements for non-White students to make a video about White privilege or attend the "Waking up White" event. Nor does he explain how these assignments relate to his dismissal from the University. Finally, there isn't a reasonable expectation that discovery would reveal evidence of racial discrimination. Mr. Carber claims that "he may be able to find out more about the discrimination" through discovery "because it does not make sense for a University professor to tell a student who already has the best possible grades" that he may be dismissed. (ECF No. 18 at p. 5.) But the record makes clear that other issues, such as his inability to find a qualified site supervisor—not his grades—led to his dismissal. I will therefore dismiss the discrimination claim without prejudice. Mr. Carber can try to address these failures in a proposed second

amended complaint, if he can do so in good faith and consistent with my analysis in this Memorandum.

**B.    Title VI Retaliation**

Title VI creates a private cause of action for retaliation. *See Three Rivers Ctr. for Indep. Living v. Housing Auth. of City of Pittsburgh*, 382 F.3d 412, 425 (3d Cir. 2004). To establish a retaliation claim, a plaintiff must show that: (i) he was engaging in a protected activity; (ii) the funded entity subjected him to an adverse action after or contemporaneously with the protected activity; and (iii) a causal link between the adverse action and the protected activity. *See Katchur*, 354 F. Supp.3d at 668. Mr. Carber does not allege that he engaged in any form of protected activity, such as "formal charges of discrimination" or "informal protests" such as "making complaints to management." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015). I will therefore dismiss his retaliation claim without prejudice and allow an opportunity to plead additional facts.

**C.    First Amendment**

Mr. Carber claims that "[w]hen Professor Bill Gillespie sent the [Student Plan of Improvement], it showed an attack on Carbers [sic] Freedom of Expression," because it "attack[ed] Carber about his prior Term 1 written assignment work." (ECF No. 15 at p. 9.) I construe this as a First Amendment retaliation claim proceeding under 42 U.S.C. § 1983. To establish such a claim, a plaintiff must allege (i) "constitutionally protected conduct;" (ii) "retaliatory action sufficient to deter a person of ordinary firmness from exercising his

constitutional rights;" and (iii) "a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Tp.*, 463 F.3d 285, 296 (3d Cir. 2006). "Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (quoting *Suarez Corp. Indust. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)).

Assuming that Mr. Carber's Term 1 written assignments constitute constitutionally protected conduct, his claim fails because he has not pled any facts that suggest that the SPI or his dismissal was retaliatory. The portions of the SPI that critique Mr. Carber's written work ask that he "use professional language in all course deliverables," refrain from "jargon and sarcasm," and "submit deliverables that align to the requirements as described in the course materials." (ECF No. 15 at p. 46 (Ex. C-1).) The University cited failure to address this issue as one of the reasons for his dismissal. (*Id.* at p. 69 (Ex. C-6).) Academic feedback of this nature is not First Amendment retaliation. Mr. Carber sought a professional degree in education. Part of being an educator is communicating with students, parents, and colleagues professionally. And as an educational institution, it was the University's responsibility to show Mr. Carber where he was falling short. It was also the University's prerogative to dismiss him when he failed to improve. Considering this relationship between Mr. Carber and the University, as well as the nature of the allegedly

retaliatory acts, I cannot conclude that Mr. Carber has a plausible First Amendment claim. Maybe there's more that Mr. Carber can say that could explain why this statement was retaliatory. If so, he can make those allegations in a second amended complaint.

### D.    Due Process

Mr. Carber alleges that "his student due process rights were trampled on." (ECF No. 15 at p. 22.) I presume that Mr. Carber means to bring a substantive or procedural due process claim against the University under 42 U.S.C. § 1983. Either way, his claim fails.

A plaintiff bringing a substantive due process claim under § 1983 "must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Nicolas v. Pa. State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000). That property interest "must be constitutionally fundamental in order to implicate substantive due process." *Id.* at 141. Mr. Carber asserts his interest in continued academic enrollment at the University. But the Third Circuit has expressed doubt that this interest implicates substantive due process, observing that it bears "little resemblance to the fundamental interests that previously [have] been viewed as implicitly protected by the Constitution." *Id.* at 142 (quotations omitted).

Even if Mr. Carber could establish a fundamental right, decisions that educators make implicate academic freedom, "a special concern of the First Amendment." *Regents of Univ. of Mich.*, 474 U.S. at 226 (quotation omitted). Because those decisions "[are] not readily adapted to the procedural tools of judicial ... decisionmaking," a court's review of

academic decisions should be "restrained." *Id.* at 225–26 (quotation omitted). A student's dismissal only treads on a fundamental right when it "is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Id.* at 225 (citation omitted).

The University states that it dismissed Mr. Carber because of his inability to secure a qualified site supervisor, unwillingness to attend meetings to discuss his performance, lack of professionalism, and failure to improve based on feedback in the SPI. (*See* ECF No. 15 at p. 69 (Ex. C-6).) Though Mr. Carber disputes the University's characterization of his professionalism and explains that he was given short notice of the proposed meetings, he admits that he was unable to find a qualified site supervisor. (*See id.* at p. 10.) The University's decision to dismiss Mr. Carber therefore wasn't "beyond the pale of reasoned academic decision-making." *Regents of Univ. of Mich.*, 474 U.S. at 227–28. His substantive due process claim fails.

To establish a procedural due process claim, Mr. Carber must allege "deprivation by state action of a protected interest in life, liberty, or property" and "inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citation omitted). As a first matter, Mr. Carber's claim fails because he has no property interest in the pursuit and continuance of his graduate education. *See Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1397 (3d Cir. 1991).

Even if Mr. Carber could make out a protected property interest, "when a student is discharged for academic reasons, an informal faculty evaluation with the student is all that is required." *Mauriello v. Univ. of Med. and Dentistry of N.J.*, 781 F.2d 46, 51 (3d Cir. 1986). The University sent Mr. Carber the SPI, outlining the ways in which he fell short of program expectations, and then gave him an opportunity to address those issues. After it dismissed him, the University allowed Mr. Carber to submit new arguments challenging his dismissal and notified him that he could formally appeal the decision to the Dean of the School of Education. Thus, Mr. Carber "received all the procedural due process to which [he] was entitled" and has no viable claim. *Id.* at 52.

Because nothing that Mr. Carber could plead would change the outcome of his due process claims, I will dismiss them both with prejudice, meaning that Mr. Carber cannot assert the claims in any proposed second amended complaint.

### E.    Breach Of Contract

In a case based on federal question jurisdiction with supplemental jurisdiction over state law claims, I apply the choice of law rules of Pennsylvania, the forum state. *See Rohm and Haas Co. v. Adco Chemical Co.*, 689 F.2d 424, 429 (3d Cir. 1982). Pennsylvania uses the flexible "interest/contacts" methodology to resolve contract choice of law questions when the laws of two states differ. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227 (3d Cir. 2007). Wisconsin, the University's home, is the other state with an interest in this matter. A choice of law analysis isn't necessary because Pennsylvania and Wisconsin both require

a breach of contract claim to allege a contract, failure of the defendant to perform under the contract, and damages. *See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016); *Brew City Redevelopment Grp., LLC v. The Ferchill Grp.*, 714 N.W.2d 582, 588 (Wis. Ct. App. 2006).

Mr. Carber alleges that "catalogues and manuals, bulletins, registration forms and other institutional documents shared and communicated during the initial application process," as well as "advertisements and promotional materials that Carber bought into online" formed a contract between him and the University. (ECF No. 15 at p. 20.) He claims that the University breached this contract when it instructed him that he would have to retake some classes because he "was never made aware back when he signed up for the 5-term online program time length that it would be extended to 7 terms because of redoing the 4 classes again." (*Id.* at p. 16.)

Mr. Carber doesn't allege how these various promotional and informational materials created a contract or what the terms of that contract were. Even if Mr. Carber could establish the existence of a contract, his conclusory allegations regarding breach aren't enough to make out his claim; he must identify which provisions the University breached and how. I will therefore dismiss Mr. Carber's breach of contract claim without prejudice, meaning that he can address these failures in a proposed second amended complaint, if he can do so in good faith.

IV.    **CONCLUSION**

I will grant the University's Motion To Dismiss Amended Complaint (ECF No. 17) and dismiss Mr. Carber's Amended Complaint. I will permit Mr. Carber to file a second amended complaint if he believes that he can address the issues that I have identified. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

March 6, 2025