IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JEREMIAH CARBER**,<br><br>*Plaintiff,*<br><br>v.<br><br>**UNIVERSITY OF WISCONSIN-LA CROSSE**,<br><br>*Defendant.* | **Case No. 2:24-cv-01898-JDW** |

### MEMORANDUM

I dismissed Jeremiah Carber's Amended Complaint and gave him a final chance to plead his claims with more specificity. Because he renews the same claims without the facts necessary to make them plausible, I will dismiss his Second Amended Complaint with prejudice.

## I.    BACKGROUND

Mr. Carber decided to enroll in the University Of Wisconsin-La Crosse's Master Of Science In Education program after coming across "various promotional and information materials" on the University's website. (ECF No. 23 at 2.) He spoke on the phone with the program's director, Bill Gillespie, who oversaw his acceptance.

Though the University administers the program online, students must have an on-site practicum supervisor who meets requirements of the Wisconsin Department Of Public

Instruction. (*See id.* at 127–28 (Evidence E-2).) When Mr. Carber enrolled in February 2021 for the spring term, he lived in China. Mr. Gillespie approved Merri Vance Allen-Wallace[1] as Mr. Carber's site supervisor. (*See id.* at pp. 3, 117 (Evidence A-1).) According to Mr. Carber, Mr. Gillespie also told him that Dr. Vance could still serve as a site supervisor even if Mr. Carber changed jobs and didn't work at the same school as Dr. Vance. Mr. Carber anticipated graduating in the summer or fall of 2022.

Mr. Carber paid for and completed three terms of the program, receiving a 4.0 GPA. Around Mr. Carber's fourth term, he moved to start a new job. The University informed him that Dr. Vance could no longer serve as his site supervisor because she didn't work in his school district.

The University sent Mr. Carber a Student Improvement Plan ("SIP") on February 15, 2022, which required him to obtain a new site supervisor and identified several state standards that Mr. Carber had failed to meet. According to Mr. Carber, parts of the SIP discriminate against his political views. For example, the SIP states that Mr. Carber "refused to work with a group of students on a project involving the rights of Immigrant children attending public schools in the US. He did not understand the prompt the way his group members approached it and did not work with his group members to try and fulfill the assignment in a way that everyone found acceptable." (*Id.* at 10.) Another portion of the SIP states that Mr. Carber "was unable to successfully complete the assignment Final

---

[1] Mr. Carber refers to Merri Vance Allen-Wallace as "Dr. Vance," so I will do the same.

Deliverable: School Law Interview & Analysis" and "received a below average grade." (*Id.* at 16.) Mr. Carber contends that this was because the University "didn't like the answers that the interviewee gave," seemingly because they were incomplete. (*Id.*)

The University gave Mr. Carber until April 12, 2022, to meet the expectations outlined in the SIP, including obtaining a new site supervisor. Mr. Carber contends that the SIP violated the University's Code Of Conduct, which sets forth academic standards for graduate students. The University did not place other students on an SIP.

Around March 15, 2022, Mr. Gillespie told Mr. Carber that Mr. Carber had an opportunity at that time to withdraw from the program, at which point Mr. Carber "knew something was wrong" and complained to the Student Life Center. (*Id.* at 23.) Around March 26, 2022, the University sent Mr. Carber a notice of intent to dismiss and requested that he respond by April 1, 2022. Mr. Carber wasn't able to obtain a new supervisor, and the University dismissed him from the program.

Mr. Carber informed other students that he had been dismissed by posting on an online discussion forum. (Mr. Gillespie instructed Mr. Carber to remove the post and Mr. Carber complied "in hopes of being cooperative [sic] will lead to him finishing the Degree later on[.]" (*Id.* at 21.)[2]

---

[2] In his response to the University's Motion, Mr. Carber alleges additional facts to bolster his claims. However, it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," so I have not considered those facts. *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). In any event, none of those additional facts would change my analysis.

3

Mr. Carber filed an initial *pro se* Complaint on May 3, 2024, and an Amended Complaint on August 14, 2024. The University filed a motion to dismiss the Amended Complaint, which I granted. However, I gave Mr. Carber permission to file a Second Amended Complaint ("SAC"). He filed his SAC on April 4, 2025, renewing his allegations of discrimination, retaliation, First Amendment retaliation, and breach of contract. He also requested that I enter an order requiring the University to enroll him for the fall 2025 term. The University has moved to dismiss the SAC and to strike Mr. Carber's request. These issues are ripe for review.

## II. LEGAL STANDARD

A district court may dismiss a complaint where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When deciding a motion to dismiss, courts consider "the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quotations omitted). "[A] court must 'accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (citation omitted). To survive, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

4

*Id.* (citation omitted). Judges interpret complaints from *pro se* litigants liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (pro se filings are construed liberally).

### III.  ANALYSIS

Mr. Carber's SAC renews his claims for Title VI discrimination, Title VI retaliation, First Amendment retaliation, and breach of contract, which I previously dismissed without prejudice. Because Mr. Carber once again fails to state plausible claims and has had multiple opportunities to amend, I will now dismiss all claims against the University with prejudice. *See USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2006); *Burgos v. City of Philadelphia*, 270 F. Supp. 3d 788, 795 (E.D. Pa. 2017). A dismissal with prejudice means that Mr. Carber may not bring any future claims—including claims that he didn't bring, but could have brought—against the University, based on these events, in either state or federal court. *See Gambocz v. Yelencsics*, 468 F.2d 837, 840 (3d Cir. 1972); *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008).

####    A.    Title VI Discrimination

Mr. Carber alleges that the University discriminated against him when it dismissed him, but he doesn't allege a basis for that discrimination that would trigger either Title VI or Title IX, such as race, color, national origin, or sex. *See* 42 U.S.C. § 2000d; 20 U.S.C. § 1681. Nor does he identify another statutory basis for his claim.

Even if I consider Mr. Carber's allegations from his first Amended Complaint and treat his SAC as alleging discrimination on the basis of race (*see* ECF No. 21 at 5), he would

need to allege facts indicating that he suffered an adverse action, that he was qualified to continue the pursuit of his education, and that he was treated differently from similarly situated students who are not members of the protected class. *See Katchur v. Thomas Jefferson Univ.*, 354 F. Supp. 3d 655, 666 (E.D. Pa. 2019).[3] And his allegations must "raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

Taking Mr. Carber's factual allegations as true and viewing them in a light most favorable to him, I find that his dismissal was an adverse action. But, as I observed when I dismissed Mr. Carber's first Amended Complaint, he was not qualified to continue his education. By his own admission, Mr. Carber was unable to find a new site supervisor after he moved. This was one of the reasons the University gave for his dismissal, and nothing in the SAC gives me a reason to question the University's determination that having a site supervisor defined eligibility to continue in the program.

Even if I credit the assertion that Mr. Gillespie initially told Mr. Carber that Dr. Vance could serve as a site supervisor without working at the same school, that's not the same as having a supervisor who is geographically remote (whether in another school district or another city). Thus, Mr. Carber's allegation does not save his claim. In addition, Mr.

---

[3] The Third Circuit has not adopted these elements in a precedential opinion, but panels of the Third Circuit have done so in several nonprecedential opinions, and I find those, as well as Judge Baylson's analysis in *Katchur*, persuasive. *See, e.g., L.L. v. Evesham Twp. Bd. of Ed.*, 710 Fed. App'x 545, 548–49 (3d Cir. 2017); *Utah v. Strayer Univ.*, 667 Fed. App'x 370, 371–72 (3d Cir. 2016).

Carber has not alleged facts to establish that that the University treated him differently from similarly situated, non-White students. For instance, he does not allege that the University relaxed the site supervisor requirement for non-White students. Nor is there a reasonable expectation that discovery would reveal evidence of discrimination. Mr. Carber's primary argument is that he must have been discriminated against because the University dismissed him even though he had good grades. But it's evident that other issues led to his dismissal, such as his inability to find a qualified site supervisor and work well with his classmates. I will therefore dismiss his discrimination claim with prejudice.

### B. Title VI Retaliation

To the extent that Mr. Carber intends to allege a Title VI retaliation claim, it also fails. To establish a retaliation claim, a plaintiff must show that: (i) he was engaging in a protected activity; (ii) the funded entity subjected him to an adverse action after or contemporaneously with the protected activity; and (iii) a causal link between the adverse action and the protected activity. *See Katchur*, 354 F. Supp.3d at 668. Protected activity includes "formal charges of discrimination" or "informal protests" such as "making complaints to management." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015).

Mr. Carber alleges only that, at some point after March 2022, he complained to the Student Life Center. He doesn't say whether his complaint was about discrimination or some other grievance. Even if this qualifies as protected activity, Mr. Carber doesn't allege

7

any facts establishing a causal link between that complaint and his dismissal, or any other adverse action that the University took. I will therefore dismiss Mr. Carber's Title VI retaliation claim with prejudice.

### C. First Amendment Retaliation

Mr. Carber alleges that the SIP shows that the University discriminated against him based on his political views and that Mr. Gillespie forced him to take down an online post sharing that he had been dismissed, which violated his "freedom of speech & expression." (ECF No. 23 at 21.) I construe these as First Amendment retaliation claims under 42 U.S.C. § 1983. To establish such a claim, a plaintiff must allege (i) "constitutionally protected conduct;" (ii) "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights;" and (iii) "a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Tp.*, 463 F.3d 285, 296 (3d Cir. 2006). "'Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts.'" *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (quoting *Suarez Corp. Indust. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)). The alleged retaliatory acts must be more than *de minimis* or trivial. *See id.*

Assuming that Mr. Carber's assignments constitute constitutionally protected conduct, his claim fails because he has not pled any facts that suggest that the SIP, his

dismissal, or any other action by the University was retaliatory. The two portions of the SIP that Mr. Carber refers to don't persuade me otherwise, because—as I explained to Mr. Carber in my Memorandum dismissing his first Amended Complaint—academic feedback is not First Amendment retaliation. The first part of the SIP with which Mr. Carber takes issue states that he refused to work with group members on an assignment, which was "an example of his inability to work with others on a school staff[.]" (ECF No. 23 at 10.) The subject of the University's critique was therefore Mr. Carber's refusal to collaborate on a group assignment, not any political views that he may have expressed. The second portion pertains to a final assignment that involved interviews with educators. Mr. Carber argues that he completed the assignment, but the SIP doesn't contest that. Rather, it appears that Mr. Carber received a below-average grade because some of the interviewees' answers were incomplete. And, at any rate, Mr. Carber doesn't allege that the poor grade or the SIP retaliated against any speech or expression by him.

As for the discussion post that Mr. Carber had to take down, that also fails to make out a First Amendment claim because there wasn't any retaliatory action by the University. Mr. Carber had already been dismissed from the program. The only action that the University took at all was asking him to remove the post, but that request is the kind of *de minimis* action that doesn't rise to the level of a retaliatory act. Nothing that Mr. Carber alleges suggests otherwise.

### D. Breach Of Contract

Mr. Carber alleges that "various promotional and informational Materials along with phone call meetings, money exchanged, and emails" formed a contract between him and the University. (ECF No. 23 at 1.) He claims that the University breached this contract when it instructed him that Dr. Vance could no longer serve as his site supervisor and eventually dismissed him from the program. He also claims that the University violated its Code Of Conduct and that this constitutes a breach of contract.

Mr. Carber doesn't allege how these promotional materials and communications created a valid contract through offer, acceptance, and consideration, nor how the Code Of Conduct—which sets academic standards for graduate students but doesn't impose any obligations on the University—created a contract that binds the University. Even if he could make out a contract, he doesn't establish that one of its terms required the University to accept Dr. Vance as his site supervisor even if he moved and changed jobs. The evidence that Mr. Carber points to shows only that the University accepted Dr. Vance at his supervisor when he first enrolled in February 2021. (*See* ECF No. 23 at 117 (Evidence A-1), 123 (Evidence A-6).) Nothing indicates that it agreed to do so if he moved and changed jobs. Nor does Mr. Carber identify any contractual provision that the University breached by dismissing him. He doesn't allege any facts, or point to any evidence, suggesting that the University had to permit him to graduate even if he failed to comply with program requirements (such as having a qualified site supervisor) or that his dismissal

breached any other specific contractual term. I will therefore dismiss Mr. Carber's breach of contract claim with prejudice.

## IV. CONCLUSION

I will grant the University's Motion To Dismiss (ECF No. 26) and dismiss Mr. Carber's Second Amended Complaint with prejudice. As a result, I will deny Mr. Carber's request that I order the University to enroll him for the fall 2025 term and deny the University's motion to strike that request as moot. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

August 14, 2025